STATE of Indiana, Plaintiff-Appellant,

v.

JOHNSON COUNTY JAIL BUILDING CORPORATION, Summers and Company, Inc. and Fort Wayne National Bank, Defendants-Appellees.

No. 3–1081A255.

Court of Appeals of Indiana,
Third District.

June 30, 1982.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for plaintiff-appellant.

Martin T. Fletcher, Richard H. Blaich, Fort Wayne, for defendants-appellees.

STATON, Judge.

The Board of Commissioners of Johnson County, Indiana entered into a lease [1] with the Johnson County Jail Building Corpora-

---

1. This lease transaction was governed by the now repealed IC 18–5–3.3–1 *et seq.*

tion for a jail facility.[2] The Corporation was to build the jail according to the specifications of the Board of Commissioners. The lease required the County to make forty semi-annual payments totaling $192,480 per year; however, this figure was subsequently reduced to $171,000.

After the execution of the lease, the Corporation, Fort Wayne National Bank, and Summers and Company, Inc. of Fort Wayne executed a document called a "Commitment Agreement." Pursuant to the agreement, the Bank issued Participation Certificates in order to finance the construction of the jail. All the certificates were purchased at a total discount of $192,975 by Summers.

After the jail was constructed and Johnson County accepted it, the State Board of Accounts audited the records relating to the jail construction project, the Corporation, and Johnson County. Later, when the audit was a public document, the Attorney General of Indiana filed a complaint against the Corporation, the Bank and Summers to recover alleged excess charges. A motion to dismiss was filed by the Corporation, the Bank, and Summers. The motion was granted.

On appeal, the Attorney General raises the following issue:[3]

Whether the trial court erred when it found that the Attorney General did not have nor did he demonstrate he possessed the legal capacity to institute the law suit.

We affirm.

Arguing against the motion to dismiss, the Attorney General had argued that IC 5–11–1–9, IC 5–11–5–1, and IC 5–11–6–1 empowered him with the legal capacity to bring the suit;[4] however, on appeal, the Attorney General admits that IC 5–11–1–9 is not applicable to the present fact situation. Instead, he relies on IC 5–11–5–1, IC 5–11–6–1, and IC 5–11–6–3.

The Attorney General's reliance on IC 5–11–6–1 is misplaced. IC 5–11–6–1 states in part:

"Examinations authorized—Petition of taxpayers—Reports—Expenses—Recovery of funds.—The state examiner, of the department of inspection and supervision of public offices [state board of accounts], personally or through the deputy examiners or field examiners, *upon the petition of twenty-five [25] interested taxpayers, showing that effective local relief has not and cannot be obtained after due effort,* shall make such inquiries, tests, examinations and investigations as may be necessary to ascertain and determine whether any public contract has been regularly and lawfully executed and performed and whether any public work, building or structure has been or is being performed, built or constructed, in accordance with the terms and provisions of the contract or contracts, and in compliance with the plans and specifications, if any, under and in pursuance of which such public work, building or structure has been or is being performed, built or constructed, or at the written petition of said twenty-five [25] taxpayers said state examiner may require all plans, specifications and estimates to be submitted to him for corrections and approval before any such contract shall be awarded." (Emphasis added.)

The provisions of IC 5–11–6–1 apply only when twenty-five interested taxpayers have petitioned the State Board of Accounts to make inquiries because they have been unable to obtain effective local relief. These provisions are not generally applicable whenever the State Board of Accounts has issued a report; however, IC 5–11–6–3 states:

"Report to attorney-general—Civil proceedings to recover funds.—If any exami-

---

2. The Johnson County Jail Building Corporation is a private corporation. It is hereinafter referred to as the "Corporation."

3. The issues have been combined.

4. The office of Attorney General was created by statute and is not a constitutional office; the Attorney General can only derive authority via statute. *State v. Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604, 605.

nation or investigation made by the state examiner personally or through a deputy examiner or field examiner, under or pursuant to the provisions of this act [5–11–6–1—5–11–6–5] or of any other law of the state, shall disclose malfeasance, misfeasance or nonfeasance in office, or of any officer or employee, or that any public money has been unlawfully expended, either by having been expended for a purpose not authorized by law, or in an amount exceeding that authorized by law, or by having been paid to a person or persons not lawfully entitled to receive it, or obtained by fraud or in any unlawful manner, or that any money has been wrongfully withheld from the public treasury, a duly verified copy of such report shall be placed by the state examiner with the attorney-general, who shall institute and prosecute civil proceedings as provided in section one [5–11–6–1] of this act. [Acts 1923, ch. 120, § 3, p. 320.]." (Brackets original.)

It provides the Attorney General with power to bring suit upon any examination or investigation of the State Board of Accounts that discloses:

(1) malfeasance, misfeasance, or nonfeasance

(a) in office, or

(b) of any officer or employee; [5]

(2) Any public money has been unlawfully expended

(a) for a purpose not authorized by law,

(b) an amount exceeding that authorized by law,

(c) paid to people not lawfully entitled to receive it, or

(d) obtained by fraud or any unlawful manner; or

(3) money has been unlawfully withheld from the public treasury. The State Board of Accounts report reveals that the amount that is required to pay the amount due on the Participation Certificates issued by the Bank under the "commitment agreement"

is less than the amount the County will pay as rent according to the lease. In other words, the private corporations that devised and instituted the method to raise the capital for the Corporation to build the jail will make a profit for raising the capital. This profit over the term of the lease contract was computed to be $41,227.50. The report notes:

"Your examiners could find no provision in the Contract of Lease or in other documents, as to whether the county would receive credit or a refund for the excess lease rental payments ($41,227.50) or what credit, if any, would be allowed for earnings on the funds in custody of the trustee."

Looking at the records of the Corporation, the report of the State Board of Accounts disputes the accounting classifications the Corporation has used to describe some of its expenses. The report states: "INTEREST DURING CONSTRUCTION

"As further discussed herein and as disclosed in the schedule of construction costs, the underwriter, Summers and Company, Inc., arranged for the sale of the Participation Certificates in the principal sum of $2,000,000.00, deducted a 'discount' of $192,975.00 from the proceeds of the certificates, and remitted to the trustee the net sum of $1,807,025.00. In addition, Summers and Company, Inc. received a fixed amount of $35,000.00 as an underwriting fee.

"It is recognized that the budget for the Johnson County Jail Building Corporation included an item of 'interest' of $192,975.00, but there was nothing in the Contract of Lease providing for a 'discount' nor was authority given for the issuance of Participation Certificates. The term 'interest', as used in the budget, is generally considered by building corporations to cover only the actual interest costs on moneys advanced during the course of construction, but no evidence

---

5. IC 5 11 5 1 contains only this standard; therefore, our discussion on this standard applies to both IC 5–11–6–3 and IC 5–11–5–1.

was furnished as to the actual interest costs incurred. Therefore, allowance of the discount to Summers and Company, Inc. is questionable.

"The following statement sets out the difference between the discount deducted by Summers and Company, Inc. and the interest costs computed on the basis of the terms of the Contract of Lease for the period the Johnson County Jail Building Corporation had use of such money ending on the effective interest date of the Participation Certificates.

| | |
|---|---|
| "Discount on Participation Certificates | $ 192,975.00 |
| Less: Interest computed at the maximum rate of 7.25% specified in the Contract of Lease, from April 26, 1977, the date of the receipt of the proceeds of the sale of Participation Certificates by the trustee from Summers and Company, Inc., to the effective interest date of the the Participation Certificates, December 15, 1977, ($1,807,025.00 x 7.25% per annum for 233 days). | $ 83,630.58 |
| Difference (Excess) | $ 109,344.42 |

"The commitment agreement cited on page 5 is the only document referring to a 'discount', which document further provided that the discount reflect among other things '(a) interest costs, (b) legal fees, and (c) underwriting cost'. Yet, as shown elsewhere in this report, legal fees of $17,500.00 and underwriting cost of $35,000.00 were paid in addition to the discount taken.

"If Summers and Company, Inc. was required to sell the Participation Certificates at a discount, such discount might be considered an interest cost. However, your examiners were unable to obtain from Summers and Company, Inc. any evidence the certificates were sold at less than par value or otherwise discounted at the time of sale.

"In view of the foregoing, it appears that excess interest of $109,344.42 was considered a part of the costs of the building, which costs are being assumed and paid by Johnson County through the lease rental payments."

The Attorney General concluded that excess lease rental payments would be made by the County and that Summers had retained an excess charge of $109,344.42. Based upon the State's answers to interrogatories, the Attorney General also concluded that there is probable cause to believe that a public officer committed malfeasance, misfeasance, or nonfeasance because one of the members of the Board of County Commissioners had written the word "approved" upon the commitment agreement.

■ We can not agree with the Attorney General that any of the three sections of IC 5–11–6–3 outlined above have been violated. The commitment agreement is a private contract between the Corporation, the Bank, and Summers. The Attorney General has failed to cite any authority that prohibited these parties from entering into this agreement. The Attorney General makes the bald argument that because the lease agreement between the County and the Corporation neither permitted nor prohibited the agreement, the agreement is prohibited. Without some cite to authority, this argument is unconvincing. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). There does not exist probable cause to believe that an officer committed misfeasance, malfeasance, or nonfeasance when he approved the commitment agreement because the approval was meaningless; the parties could have entered into their private contract even if the official had disapproved the commitment agreement. The trial court did not err when it found that the acts specified by the Attorney General as constituting misfeasance, malfeasance, or nonfeasance would not constitute acts of misfeasance, malfeasance, or nonfeasance by public officers. The trial court did not err in finding that the report of the State Board of Accounts did not contain any findings that any public official or public employee committed any act of malfeasance, misfeasance, or nonfeasance; however, assuming *arguendo* it did err, such error would be harmless and not grounds for reversal because no malfeasance, misfea-

sance, or nonfeasance actually occurred. TR. 61.

 No public money was unlawfully expended because the amount the County paid the Corporation was fixed by the lease agreement. The Attorney General has not alleged that the amounts agreed upon were in any way dependent upon the commitment agreement nor has he cited any authority that any amounts the Corporation saved through its plan to raise capital to build the jail must be passed along to the County. The lease merely states the amount and number of payments the County agreed to make to the Corporation. The County only expended the amount of funds required by its lease with the Corporation.

Judgment affirmed.

GARRARD, J., concurs.

HOFFMAN, P. J., concurs in result.