**WAYNE COUNTY CITIZENS ASSN. v. WAYNE COUNTY BD. OF COMRS.**

[328 N.C. 24 (1991)]

WAYNE COUNTY CITIZENS ASSOCIATION FOR BETTER TAX CONTROL: ROBERT OUTLAW, INDIVIDUALLY, AND AS CHAIRMAN OF THE WAYNE COUNTY CITIZENS ASSOCIATION FOR BETTER TAX CONTROL; JOE DAUGHTERY, INDIVIDUALLY, AND AS SECRETARY-TREASURER OF THE WAYNE COUNTY CITIZENS ASSOCIATION FOR BETTER TAX CONTROL; ED ALLEN, JIM BARNWELL, GARLAND JOYNER, AND THOMAS WOOTEN, ALL INDIVIDUALLY, AND AS MEMBERS OF THE BOARD OF DIRECTORS OF THE WAYNE COUNTY CITIZENS ASSOCIATION FOR BETTER TAX CONTROL v. WAYNE COUNTY BOARD OF COMMISSIONERS, ATLAS PRICE, JOHN WOOTEN, BETSY JOHNSON, TOMMY JARRETT, J. NELSON KORNEGAY, HOWARD BUDDY SHAW, AND JERRY BRASWELL, ALL AS MEMBERS OF THE WAYNE COUNTY BOARD OF COMMISSIONERS

No. 252PA90

(Filed 10 January 1991)

1. **Counties § 6.2 (NCI3d); Municipal Corporations § 38 (NCI3d) — local governments — financing improvements — installment contracts — security interest — constitutionality of statute**

   The statute authorizing local governments to finance the construction of improvements on real property by installment contracts that create a security interest in the improvements and real property without a vote of the people, N.C.G.S. § 160A-20, does not violate Art. V, §§ 4(2), 4(5) and 7(2) of the N.C. Constitution since the statute clearly bars the pledging of the taxing power to secure monies due under a contract covered by the statute. The possibility that appropriations which might include income from tax revenues will be used to repay the indebtedness under the contract is not a constitutionally significant factor.

   **Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 100, 494.**

2. **Counties § 6.2 (NCI3d); Municipal Corporations § 38 (NCI3d) — local governments — improvements to realty — installment purchase contracts — compliance with statute**

   N.C.G.S. § 160A-20 implicitly authorized the use of county revenues to make payments under an installment purchase contract. Furthermore, a county board of commissioners complied with the provisions of § 160A-20 in entering an installment purchase contract for court, administrative and jail buildings where the contract granted a security interest in the real property on which the buildings were located; the

WAYNE COUNTY CITIZENS ASSN. v. WAYNE COUNTY BD. OF COMRS.

[328 N.C. 24 (1991)]

county's installment payments are to be made from appropriations in the sole discretion of the county for any fiscal year in which the contract is in effect; the contract and other documents provide that the taxing power of the county is not pledged directly or indirectly to secure any monies due; the lender's sole remedy for failure of the county to make the required payments is to repossess the real property; the contract provides that no deficiency judgment may be rendered against the county; and the Local Government Commission made the required findings and gave its required approval of the contract.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 100, 494.**

ON discretionary review prior to determination by the Court of Appeals pursuant to N.C.G.S. § 7A-31 and Rule 15 of the North Carolina Rules of Appellate Procedure, upon the joint petition of the parties, of orders of *Butterfield, J.,* signed on 4 April 1990 and 6 April 1990, respectively, at the 26 March 1990 regular term of Superior Court, WAYNE County. Heard in the Supreme Court 14 November 1990.

*Braswell & Taylor, Attorneys, by Roland C. Braswell, for plaintiff-appellants.*

*Baddour, Parker & Hine, P.A., by E.B. Borden Parker, and Parker, Poe, Adams & Bernstein, by Charles C. Meeker, Blair Levin, and Heman R. Clark, for defendant-appellees.*

*Lacy H. Thornburg, Attorney General, by Douglas A. Johnston, Assistant Attorney General, amicus curiae.*

*Hunton & Williams, by William H. McBride; N.C. Association of County Commissioners, by James B. Blackburn III, General Counsel; and N.C. League of Municipalities, by S. Ellis Hankins, General Counsel, for North Carolina Association of County Commissioners and North Carolina League of Municipalities, amici curiae.*

MEYER, Justice.

Plaintiffs in this action are an unincorporated group known as Wayne County Citizens Association for Better Tax Control (hereinafter "Tax Association") and individuals who are citizens,

residents, and taxpayers of Wayne County acting individually and as officers and members of the Board of Directors of the Tax Association. By a complaint filed 26 January 1990, plaintiffs challenged the constitutionality of N.C.G.S. § 160A-20, which authorizes a local government unit to enter into a contract granting a security interest in real property subject to improvement. The relief sought by the plaintiffs was that N.C.G.S. § 160A-20 be declared unconstitutional as being in violation of article V, section 4 and section 7(2) of the North Carolina Constitution and, further, a declaration that defendants did not comply with the provisions of that statute in carrying out the transaction complained of. The defendant Board of Commissioners and its members filed an answer denying the material allegations of the complaint and subsequently filed motions for summary judgment and to dismiss the action.

The matter was heard before Butterfield, J., at the 26 March 1990 term of Superior Court on defendants' motion for summary judgment. By order entered 29 March 1990 and signed 4 April 1990, the trial judge, after ruling that there was no genuine issue as to any material fact and that the court would rule as a matter of law on all issues pending therein, (1) ordered, with the consent of all parties, that the Attorney General of North Carolina, who had filed a brief, be allowed to appear as a friend of the court; (2) held that the individual plaintiffs and the Tax Association have standing to bring the action and are proper parties; (3) held that the County of Wayne and the other defendants had complied with the provisions of N.C.G.S. § 160A-20 and that defendants' actions in the matter as they relate to that statute were lawful; (4) reserved ruling on the constitutionality of N.C.G.S. § 160A-20 and ruled that he would henceforth treat the action as an action for declaratory judgment; and (5) allowed the parties until 4 April 1990 to submit additional briefs.

On 6 April 1990, the trial judge, based upon the record in the case (including a stipulation of the parties), briefs submitted to the court, and oral argument, found as a fact and concluded as a matter of law that N.C.G.S. § 160A-20 was constitutional in every respect, taxed the costs of the action to the plaintiffs, and dismissed the action. Plaintiffs appealed from both orders, and we allowed the parties' joint petition and the Attorney General's supplemental petition to bypass the Court of Appeals on 26 July 1990.

WAYNE COUNTY CITIZENS ASSN. v. WAYNE COUNTY BD. OF COMRS.

[328 N.C. 24 (1991)]

Plaintiffs assign as error that the trial judge erred (1) in his ruling that N.C.G.S. § 160A-20 is constitutional in all respects; (2) in his ruling that defendants had complied with the provisions of N.C.G.S. § 160A-20; and (3) therefore, erred in dismissing the plaintiffs' action. We conclude that the trial judge did not err, and we therefore affirm his orders.

In 1989, the Board of Commissioners of Wayne County determined that the County needed to build additional county court, administrative, and jail facilities. These facilities consist of a new four-story court and administrative building with 96,590 square feet (including five new courtrooms and offices for the clerk of court, the district attorney, and the register of deeds) and a new five-story jail with 44,000 square feet. After public notice and hearing, the Board of Commissioners approved negotiation of a $7,500,000 installment purchase contract (hereinafter "the contract") with First Union Securities, Inc. Upon application by Wayne County, the Local Government Commission of North Carolina approved the contract. The contract was not submitted to a vote of the people of Wayne County for their approval.

As part of the contract, First Union Securities was granted a security interest on the real property on which the court, administrative, and jail buildings were located. Wayne County's installment payments are to be made from appropriations in the sole discretion of Wayne County for any fiscal year in which the contract is in effect. The contract and other documents associated with this transaction expressly provide that (1) the taxing power of Wayne County is *not* pledged directly or indirectly to secure any monies due; (2) to the extent that Wayne County does not make any payment beyond that appropriated by the County for any fiscal year in which the contract is in effect, First Union Securities' sole remedy is to repossess the real property; and (3) no deficiency judgment may be rendered against the County.

Specifically, article XV of the contract, in pertinent part, provides the following as to the "LIMITED OBLIGATION OF THE COUNTY":

NO PROVISION OF THIS CONTRACT SHALL BE CONSTRUED OR INTERPRETED AS CREATING A PLEDGE OF THE FAITH AND CREDIT OF THE COUNTY WITHIN THE MEANING OF ANY CONSTITUTIONAL DEBT LIMITATION. NO PROVISION OF THIS CONTRACT SHALL BE CONSTRUED OR INTERPRETED AS CREATING A DELEGATION OF GOVERNMENTAL POWERS NOR AS A DONATION BY OR A LENDING

OF THE CREDIT OF THE COUNTY WITHIN THE MEANING OF THE CONSTITUTION OF THE STATE. THIS CONTRACT SHALL NOT DIRECTLY OR INDIRECTLY OR CONTINGENTLY OBLIGATE THE COUNTY TO MAKE ANY PAYMENTS BEYOND THOSE APPROPRIATED IN THE SOLE DISCRETION OF THE COUNTY FOR ANY FISCAL YEAR IN WHICH THE CONTRACT IS IN EFFECT; PROVIDED, HOWEVER, ANY FAILURE OR REFUSAL BY THE COUNTY TO APPROPRIATE FUNDS, WHICH RESULTS IN THE FAILURE BY THE COUNTY TO MAKE ANY PAYMENT COMING DUE HEREUNDER WILL IN NO WAY OBVIATE THE OCCURRENCE OF THE EVENT OF DEFAULT RESULTING FROM SUCH NONPAYMENT. NO DEFICIENCY JUDGMENT MAY BE RENDERED AGAINST THE COUNTY IN ANY ACTION FOR BREACH OF A CONTRACTUAL OBLIGATION UNDER THIS CONTRACT AND THE TAXING POWER OF THE COUNTY IS NOT AND MAY NOT BE PLEDGED DIRECTLY OR INDIRECTLY OR CONTINGENTLY TO SECURE ANY MONEYS DUE UNDER THIS CONTRACT.

Plaintiff-appellants argue that under the installment purchase contract between First Union Securities and Wayne County, the Board could be forced to appropriate money in future years to make payments under the contract. We do not agree. The plain language of the document does not provide such power, and our decision is based upon our conclusion that such power does not exist.

Article XV of the contract provides in part:

THIS CONTRACT SHALL NOT DIRECTLY OR INDIRECTLY OR CONTINGENTLY OBLIGATE THE COUNTY TO MAKE ANY PAYMENTS BEYOND THOSE APPROPRIATED IN THE SOLE DISCRETION OF THE COUNTY FOR ANY FISCAL YEAR IN WHICH THE CONTRACT IS IN EFFECT; PROVIDED, HOWEVER, ANY FAILURE OR REFUSAL BY THE COUNTY TO APPROPRIATE FUNDS, WHICH RESULTS IN THE FAILURE BY THE COUNTY TO MAKE ANY PAYMENT COMING DUE HEREUNDER WILL IN NO WAY OBVIATE THE OCCURRENCE OF THE EVENT OF DEFAULT RESULTING FROM SUCH NONPAYMENT.

This language makes clear that the annual events of appropriation are subject to the *sole discretion* of the Board. Under the plain language of the contract, the Board cannot be forced to appropriate amounts for payment of the contract in any year. Article XV also provides that, to the extent that there may be any conflict between this article and any other provision in the contract, article XV takes priority.

[1] We first address plaintiffs' contention that N.C.G.S. § 160A-20 is unconstitutional. In determining the constitutionality of N.C.G.S. § 160A-20, we begin with several well-settled principles. The first is that a statute enacted by the General Assembly is presumed to be constitutional.

> The presumption is in favor of the constitutionality of an act. All doubts must be resolved in favor of the Act. The Constitution is a restriction of powers and those powers not surrendered are reserved to the people to be exercised through their representatives in the General Assembly; therefore, so long as an act is not forbidden, the wisdom and expediency of the enactment is a legislative, not a judicial, decision.

*In re Housing Bonds*, 307 N.C. 52, 57, 296 S.E.2d 281, 284 (1982) (citations omitted) (issuance of bonds to finance housing for persons of moderate income held constitutional). A statute will not be declared unconstitutional unless this conclusion is so clear that no reasonable doubt can arise, or the statute cannot be upheld on any reasonable ground. *Poor Richard's, Inc. v. Stone*, 322 N.C. 61, 63, 366 S.E.2d 697, 698 (1988) (it is well settled that an act passed by the legislature is presumed to be constitutional); *Ramsey v. Veterans Commission*, 261 N.C. 645, 647, 135 S.E.2d 659, 661 (1964) (a statute is presumptively valid and will not be declared void if it can be upheld on any reasonable ground). Where a statute is susceptible of two interpretations, one of which is constitutional and the other not, the courts will adopt the former and reject the latter. *Rhodes v. Asheville*, 230 N.C. 759, 53 S.E.2d 313 (1949) (statute construed so as to be within legislative authority of General Assembly).

The plaintiffs contend that N.C.G.S. § 160A-20 is invalid because it contravenes article V, section 4 of the Constitution of North Carolina. That section of our Constitution authorizes the General Assembly to regulate local government finance. The authority of the General Assembly in that regard is limited by subsection (2) of the same article, which provides:

> *Authorized purposes; two-thirds limitation.* The General Assembly shall have no power to authorize any county, city or town, special district, or other unit of local government to contract *debts secured by a pledge of its faith and credit* unless approved by a majority of qualified voters of the unit who vote thereon . . . .

N.C. Const. art. V, § 4(2) (emphasis added). Definitions for the terms used in that subsection are provided in subsection (5):

> *Definitions.* A debt is incurred within the meaning of this Section when a county, city or town, special district, or other unit, authority, or agency of local government borrows money. A pledge of faith and credit within the meaning of this Section is a pledge of the taxing power.

N.C. Const. art. V, § 4(5). Section 4 does not prohibit local governments from financing capital projects without a vote of the people so long as the financing is not by borrowing money, the debt for which is secured by a pledge of the taxing power.

Article V, section 7(2) provides: "No money shall be drawn from the treasury of any county, city or town, or other unit of local government except by authority of law."

N.C.G.S. § 160A-20 provides in pertinent part:

> (b) Cities, counties, and water and sewer authorities created under Article 1 of Chapter 162A of the General Statutes may finance the construction or repair of fixtures or improvements on real property by contracts that create in the fixtures or improvements, or in all or some portion of the property on which the fixtures or improvements are located, or in both, a security interest to secure repayment of moneys advanced or made available for such construction or repair.
>
> . . . .
>
> (e) A contract entered into under this section is subject to approval by the Local Government Commission under Article 8 of Chapter 159 of the General Statutes if it:
>
> > (1) Meets the standards set out in G.S. 159-148(a)(1), 159-148(a)(2), and 159-148(a)(3), or involves the construction or repair of fixtures or improvements on real property; and
> >
> > (2) Is not exempted from the provisions of that Article by one of the exceptions contained in G.S. 159-148(b).
>
> (f) No deficiency judgment may be rendered against any city, county, or water and sewer authority created under Article 1 of Chapter 162A of the General Statutes in any action for breach of a contractual obligation authorized by this sec-

WAYNE COUNTY CITIZENS ASSN. v. WAYNE COUNTY BD. OF COMRS.

[328 N.C. 24 (1991)]

> tion, and *the taxing power of a city or county is not and may not be pledged directly or indirectly to secure any moneys due under a contract authorized by this section.*

N.C.G.S. § 160A-20(b), (e), (f) (Cum. Supp. 1990) (emphasis added).

The statute could hardly be clearer in barring the pledging of the taxing power to secure moneys due under a contract covered by the statute. It, likewise, clearly authorizes the method of financing employed here and, by implication, the payment of the debt incurred. By its unmistakable terms, N.C.G.S. § 160A-20 respects the constitutional prohibitions of article V, sections 4 and 7; in addition, no deficiency judgment can be rendered against the local government. Plaintiffs contend that defendants, by the ruse of the contract, were attempting to do indirectly that which they could not do directly, that is, incur a contract debt wherein, as security, defendants pledged not only the property in question, but the faith and credit of the County, because defendants are going to pay the contract debt and interest with moneys raised through taxation. We disagree.

Plaintiffs argue that N.C.G.S. § 160A-20 is unconstitutional because the statute allows the County to enter into an agreement pursuant to which the County may expend tax revenues in future years without a vote of the people. We find no merit in this argument. What is being pledged as security is the constitutionally significant factor. Unlike general obligation bonds, wherein the taxing power of the governmental unit is pledged, in installment purchase contracts, only the property improved is pledged. The possibility that appropriations which might include income from tax revenues will be used to repay the indebtedness under the contract is not a constitutionally significant factor.

Courts in a number of other jurisdictions have upheld as constitutional installment purchase contracts by units of government such as the one here. *See Searcy County v. Horton*, 270 Ark. 22, 603 S.W.2d 437 (1980); *Glennon Heights, Inc. v. Central Bank & Trust*, 658 P.2d 872 (Colo. 1983); *State v. Johnson County Jail Bldg. Corp.*, 437 N.E.2d 477 (Ind. Ct. App. 1982); *Edgerly v. Honeywell Info. Syss., Inc.*, 377 A.2d 104 (Me. 1977); *Cox v. Jackson Mun. Separate School Dist.*, 503 So. 2d 265 (Miss. 1987); *St. Charles City-County Libr. Dist. v. St. Charles Libr. Bldg. Corp.*, 627 S.W.2d 64 (Mo. Ct. App. 1981); *Ruge v. State*, 201 Neb. 391, 267 N.W.2d 748 (1978); *Enourato v. N.J. Building Auth.*, 182 N.J. Super. 58,

440 A.2d 42 (1981), *aff'd*, 90 N.J. 396, 448 A.2d 449 (1982); *Burns v. Egan*, 129 Misc. 2d 130, 492 N.Y.S.2d 666 (N.Y. Sup. Ct. 1985), *aff'd*, 117 A.D.2d 38, 501 N.Y.S.2d 742 (3d Dept. 1986); *U.C. Leasing, Inc. v. State ex rel. State Bd. of Pub. Affairs*, 737 P.2d 1191 (Okla. 1987); *McFarland v. Barron*, 83 S.D. 639, 164 N.W.2d 607 (1969); *Texas Pub. Bldg. Auth. v. Mattox*, 686 S.W.2d 924 (Tex. 1985); *Municipal Bldg. Auth. of Iron County v. Lowder*, 711 P.2d 273 (Utah 1985); *Baliles v. Mazur*, 224 Va. 462, 297 S.E.2d 695 (1982); *State ex rel. W. Va. Resource Recovery v. Gill*, 323 S.E.2d 590 (W. Va. 1984); *State ex rel. Thomson v. Giessel*, 271 Wis. 15, 72 N.W.2d 577 (1955). For the most recent cases, see *State v. School Bd. of Sarasota County*, 561 So. 2d 549 (Fla. 1990), *Barkley v. City of Rome*, 259 Ga. 355, 381 S.E.2d 34 (1989), and *Haugland v. City of Bismarck*, 429 N.W.2d 449 (N.D. 1988).

In *Caddell v. Lexington County School Dist. No. 1*, 296 S.C. 397, 399, 373 S.E.2d 598, 599 (1988), the South Carolina Supreme Court rejected arguments such as those raised by the plaintiffs here and held that lease purchase agreements for construction and renovation of public school buildings were not "debt" under the South Carolina Constitution. The definition of "debt" in the South Carolina Constitution was: "any indebtedness of the school district which shall be secured in whole or in part by a pledge of its full faith, credit and taxing power." S.C. Const. art. X, § 15. In applying that definition, the South Carolina court noted that

> general obligation debt embraces neither yearly expenses payable from current revenues nor contingent liabilities of the governmental entity. This is so because the governmental entity is not obligated to impose property taxes for their payment.

*Caddell*, 296 S.C. at 400, 373 S.E.2d at 599 (footnotes omitted). The South Carolina Supreme Court held that because payment of taxes beyond the annual obligation could not be compelled, the obligation was not unconstitutional debt.

It also addressed the plaintiffs' contention that the agreement was a subterfuge to enable the district to construct needed facilities without contravening constitutional debt limitations. The court, in rejecting this argument, stated:

> The identical argument was rejected by the Supreme Court of Colorado, which upheld the financing of a city hall through a lease/purchase agreement containing a non-appropriation

clause. The following statement from that decision is pertinent here:

> The premise of the plaintiffs' argument that the plan for financing and construction of a city hall is a fraud or works an injustice upon the city's taxpayers is that it is a device to accomplish, by change of form with no change of substance, the same result which has been rejected by the voters. This premise is faulty. *It is not the construction of a city hall for which voter approval is required under Colo. Const. Art. XI, § 6. Rather, it is the creation of a general obligation debt of the city which requires the assent of the voters.* The plan submitted to and rejected by the voters would have created such a general obligation debt. The plan now proposed does not. This difference is constitutionally significant.

*Id.* at 401-02, 373 S.E.2d at 600 (quoting *Gude v. City of Lakewood,* 636 P.2d 691, 697 (Colo. 1981)).

[2] We find plaintiffs' argument on their second assignment of error, that is, that defendants did not comply with the provisions of N.C.G.S. § 160A-20, also to be without merit. Essentially, they argue that there is no authority of law which authorizes the taking of tax revenues to pay a contract debt. Quite clearly, N.C.G.S. § 160A-20, which expressly authorizes such contracts, implicitly authorizes the use of county revenues to make payments under the contract.

Although unnecessary to a decision of this case, in connection with plaintiffs' contention that defendants did not comply with the provisions of the statute, we find it significant that N.C.G.S. § 160A-20(e) requires the approval of the North Carolina Local Government Commission (hereinafter the "LGC") for such contracts if, as here, they involve the construction or repair of fixtures or improvements on real property.

The LGC is a statutorily established state agency, with the responsibility for overseeing local government finance. Its responsibilities include approving all issuances of debt secured by pledges of the faith and credit (N.C.G.S. ch. 159, art. 4), revenue bond indebtedness and issuances (N.C.G.S. ch. 159, art. 5), and certain financing agreements (N.C.G.S. ch. 159, art. 8), as well as annual approval over the budget and accounting practices of local govern-

ments. Due largely to the effective and extensive review of local financing by the LGC, North Carolina has not experienced any local government indebtedness defaults in over fifty years and currently has the highest number of the highest rated local government units of any state in the nation.

N.C.G.S. § 160A-20 specifically requires that such contracts be generally subject to LGC approval under article 8 of chapter 159. N.C.G.S. § 160A-20(e) (Cum. Supp. 1990). The statute which provides the usual conditions for requiring approval is N.C.G.S. § 159-148, not N.C.G.S. § 160A-20, and includes four criteria, all of which must be met to acquire LGC approval. The fourth criteria of N.C.G.S. § 159-148 is that the contract *obligate the local government* "expressly or by implication, to exercise its power to levy taxes either to make payments falling due under the contract, or to pay any judgment entered against the unit as a result of the unit's breach of the contract." N.C.G.S. § 159-148(a)(4) (Cum. Supp. 1990) (emphasis added). The significance of this is that the legislature, in amending N.C.G.S. § 160A-20, understood that contracts entered into under that statute would *not* obligate the unit expressly or by implication to exercise its power to levy taxes; therefore, a *specific* and different statutory provision was required to ensure that LGC approval be obtained in transactions such as the contract in question. Otherwise, there would be no need for the specific provision of N.C.G.S. § 160A-20(e).

The legislature has given the LGC rigorous standards for the approval of such contracts. N.C.G.S. § 159-151(a) mandates that in determining whether a proposed contract shall be approved, the LGC may consider:

(1) Whether the undertaking is necessary or expedient.

(2) The nature and amount of the outstanding debt of the contracting unit.

(3) The unit's debt management procedures and policies.

(4) The unit's tax and special assessments collection record.

(5) The unit's compliance with the Local Government Budget and Fiscal Control Act.

(6) Whether the unit is in default in any of its debt service obligations.

(7) The unit's present tax rates, and the increase in tax rate, if any, necessary to raise the sums to fall due under the proposed contract.

(8) The unit's appraised and assessed value of property subject to taxation.

(9) The ability of the unit to sustain the additional taxes necessary to perform the contract.

(10) If the proposed contract is for utility or public service enterprise, the probable net revenues of the undertaking to be financed and the extent to which the revenues of the utility or enterprise, after addition of the revenues of the undertaking to be financed, will be sufficient to meet the sums to fall due under the proposed contract.

(11) Whether the undertaking could be financed by a bond issue, and the reasons and justifications offered by the contracting unit for choosing this method of financing rather than a bond issue.

N.C.G.S. § 159-151(a) (1987). N.C.G.S. § 159-151(a) also gives the LGC authority to inquire into and give consideration to any other matters that it may believe will have a bearing on whether the contract is to be approved.

N.C.G.S. § 159-151(b) further requires the LGC to make the following findings before it can approve any contract:

(1) That the proposed contract is necessary or expedient.

(2) That the contract, under the circumstances, is preferable to a bond issue for the same purpose.

(3) That the sums to fall due under the contract are adequate and not excessive for its proposed purpose.

(4) That the unit's debt management procedures and policies are good, or that reasonable assurances have been given that its debt will henceforth be managed in strict compliance with law.

(5) That the increase in taxes, if any, necessary to meet the sums to fall due under the contract will not be excessive.

(6) That the unit is not in default in any of its debt service obligations.

The Commission need not find all of these facts and conclusions if it concludes that (i) the proposed project is necessary and expedient, (ii) the proposed undertaking cannot be economically financed by a bond issue and (iii) the contract will not require an excessive increase in taxes.

N.C.G.S. § 159-151(b) (1987).

It should be noted that, in this case, Wayne County went through all the required procedures, and the LGC made the required findings and gave the required approval. Plaintiffs have not raised any issues related to the proceedings of the LGC's findings or approval. We find it significant indeed that, while our legislature clearly understood that transactions under N.C.G.S. § 160A-20 would not be subject to a vote of the people, it did subject such contracts to the rigorous scrutiny of the LGC and required its approval of such transactions.

In plaintiffs' argument on their third assignment of error, that is, that the trial judge erred in dismissing their complaint, the plaintiffs concede that if this Court concludes, as it has, that N.C.G.S. § 160A-20 does not violate article V, section 4 of our state Constitution, this assignment should be overruled.

In summary, we hold that N.C.G.S. § 160A-20 is constitutional, that the defendants fully complied with the provisions of that statute, and that the particular transaction represented by the contract is within the constitutional limitations and the statutory requirements of N.C.G.S. § 160A-20. The orders of Butterfield, J., signed 4 April 1990 and 6 April 1990, respectively, are hereby affirmed in all respects.

Affirmed.