***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the deputy commissioner hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and the subject matter. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer on May 27, 1999.
3. The defendant was a duly qualified self-insured with Compensation Claims Solutions as its third party administrator.
4. The defendant-employer regularly employees three or more employees.
5. The issue for determination is whether plaintiff sustained an injury by accident arising out of and in the course of her employment on May 27, 1999 when she suffered a heart attack, and if so, to what benefits may she be entitled under the Act?
6. The plaintiff's average weekly wage was $207.62, which yields a compensation rate of $138.42, based upon the Form 22.
 ***********
Based upon all the competent evidence adduced at the deputy commissioner hearing, depositions, and evidentiary exhibits, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing, plaintiff was a sixty-nine year old female high school graduate. She initially retired from public work in 1996. Plaintiff had pre-existing health problems, including heart condition, hypercholesterolemia, hypertension and borderline diabetes. Since 1994, plaintiff had received treatment and evaluations for her heart. In 1995, medical studies were consistent with her having suffered a myocardial infarction. In January of 1997, plaintiff was diagnosed with mitral valve prolapse and another episode of possible myocardial infarction.
2. In March of 1998, plaintiff began working at the Council on Aging as a support secretary. Her duties included answering the four phone lines, taking messages, taking S.O.S. reports, processing time sheets, preparing work sheets, prepare reports for Block Grants, receiving applications for meals on wheels, assigning home health aides to clients and ordering supplies. The phone system also had voice mail to handle calls. Plaintiff was also responsible for providing supplies, including latex gloves, to nurses. The Council on Aging office had two full-time and one part-time employee.
3. The office consisted of two two-story buildings, which were connected by a flight of stairs. The flight of stairs had thirteen steps.
4. Plaintiff experienced difficulty performing the job duties and was often assisted by the janitor and a nurse. She also worked overtime to complete her duties. In June of 1998, plaintiff was assigned additional duties related to the Alzheimer's Support Group. She arranged monthly board meetings and prepared quarterly meeting records. Plaintiff also was assigned additional duties on September of 1998 related to the Home Care program. Plaintiff found the review of time sheets particularly stressful, due to the many errors on the sheets by the home health aides and others. The time sheets were changed in November of 1998, and in addition to this change, plaintiff also was required to assign billing from the time sheets to either Block Grants or Medicaid. Plaintiff had to pull files and call clients to determine the proper billing for the services provided. Plaintiff was called to the county personnel office after it was learned she had been doing significant work off the clock in order to get her duties done.
5. On May 27, 1999, plaintiff walked up the thirteen steps between buildings, to carry a twenty-pound box of gloves for the home health aides. Providing the gloves was a part of plaintiff's normal job duties. Plaintiff had been instructed to have the janitor carry the boxes of gloves; but on this occasion, she performed the lifting herself. After performing this task, plaintiff returned to her desk and began reviewing the week's time sheets. Plaintiff became frustrated after the first couple of time sheets had errors, despite her instructions. There was nothing unusual about errors in the time sheets. Plaintiff went to Carol Davidson, who was the full-time nurse on staff with the Council on Aging. She reported to Ms. Davidson that her arm was very heavy. Ms. Davidson noted that plaintiff was very pale, and she took plaintiff's vital signs and advised her to remain calm, as she may be experiencing a heart attack. Plaintiff's symptoms were not contemporaneous with climbing the stairs and carrying the box of gloves, but occurred some time later while performing other desk duties.
6. Plaintiff was transported by ambulance to the emergency room at Onslow County Hospital where interventional cardiologist Dr. Damian Brezinski examined plaintiff. He diagnosed her with an anterior myocardial infarction. Following heart catheterization, Dr. Brezinski found plaintiff had critical stenosis and clot to the bifurcation of the left anterior descending coronary artery in the diagonal branch of the left coronary artery with a one hundred percent clot of the distal left anterior descending coronary artery. He performed an angioplasty for the blocked artery.
7. On July 29, 1999, plaintiff gave notice of the alleged work related injury to her employer. Ms. Zima had plaintiff sign a resignation. Since that time, the defendant has not offered plaintiff any work.
8. Dr. Brezinski released plaintiff to return to work on January 7, 2000. However, on February 15, 2000, plaintiff experienced a recurrent re-stenosis of the left anterior descending coronary artery, for which Dr. Brezinski inserted a stent. This procedure was medically necessary due to the May 27, 1999 heart attack, as well as for plaintiff's pre-existing heart condition.
9. Plaintiff has been unable to return to work since undergoing the procedure in February of 2000.
10. On June 18, 2001, plaintiff submitted to an independent medical evaluation by Dr. Robert Bersin at the Sanger Clinic in Charlotte. Plaintiff had a chemical stress test, because plaintiff refused to physically walk on the treadmill. The chemical stress test was uneventful and an intravenous adeosine nuclear scan was negative for any ischemia. Dr. Bersin then requested that plaintiff undergo the physical stress test (treadmill) in order to determine how much cardiovascular work her heart could perform. While undergoing a stress test, plaintiff suffered arrhythmia and sustained ventricular tachycardia which was distinctly abnormal and was not picked up through other tests. This condition suggested a blockage problem with circulation to the heart and Dr. Bersin recommended plaintiff have another heart catherization to resolve this problem. Plaintiff choose to return to Dr. Brezinski who performed the catherization and found scaring at the location of the prior stent. Plaintiff had recurring stenosis at the location of her prior balloon catherization.
11. Damian A. Brezinski, M.D., is an interventional cardiologist who is board certified in internal medicine and cardiology. He first saw plaintiff on May 27, 1999, when plaintiff presented at the emergency room. He performed angioplasty and based on plaintiff's CK serum level concluded that she sustained a myocardial infarction. Since this occasion, Dr. Brezinski has followed plaintiff's care and reported that she has unfortunately presented with multiple presentations for reclosure of her arteries which have required further intervention in February 2000, June 2001, and September 2001. Dr. Brezinski initially testified that plaintiff's heart attack was most likely caused by her employment. Dr. Brezinski, however, stated that he had not reviewed plaintiff's prior medical records and that his opinion was based on belief that she had no prior history of cardiac disease, which assumption is not true based on plaintiff's prior medical records. Dr. Brezinski explained that his treatment of plaintiff revealed that she had pre-attack risk factors for myocardial infarction which included high cholesterol and high blood pressure. Dr. Brezinski opined that because low levels of stress, such as exhibited by the treadmill stress test performed on plaintiff by Dr. Bersin, produced arrhythmia and sustained ventricular tachycardia plaintiff could not withstand the stress of work and was totally disabled.
12. Robert M. Bersin, M.D., is a board certified cardiologist who performed an independent medical examination on plaintiff at the request of defendant. In contrast to Dr. Brezinski, Dr. Bersin reviewed plaintiff's medical records for treatment prior to her May 1999 heart attack. Dr. Bersin explained that plaintiff's medical records note that plaintiff had high risk factors for developing arteriosclerosis including positive family history, history of high blood pressure, and high cholesterol. Medical records from as far back as 1994 indicated that plaintiff was suffering from arteriosclerosis. In addition an echocardiogram performed in 1994 indicated that plaintiff had segmental wall motion abnormalities of the left ventricle of her heart which normally signifies a blockage problem with the blood vessels to the heart. Thus, plaintiff had pre-existing cardiovascular disease before the May 1999 heart attack. Dr. Bersin explained that he performed a chemical stress test which failed to reveal any significant abnormality and followed this test with a physical, treadmill test which revealed recurrent blockage, arrhythmia and sustained ventricular tachycardia. Dr. Bersin opined that plaintiff was totally disabled until these problems were corrected. Dr. Bersin testified that he did not believe that plaintiff's employment produced her heart attack. Dr. Bersin did not believe that plaintiff's described work activities were inordinately stressful.
13. Based on the greater weight of the competent medical evidence, the Full Commission finds that plaintiff has failed to establish that she sustained an accidental injury that produced her heart attack. The evidence fails to support the deputy's conclusion that plaintiff engaged in some untoward or unusual activity which produced her heart attack. The heart attack was not contemporaneous with the physical activity of climbing the stairs and carrying the box of gloves. Rather, plaintiff's symptoms appeared after she became frustrated in working with routine paperwork. It was not unusual that the paper work contained errors. Both activities, the gathering of supplies and the preparation and correction of paperwork, were part of plaintiff's normal work activities and are not an unusual or extraordinary exertion. Nor is there any evidence to allow the Commission to find that the heart attack was caused by extreme conditions. Although Dr. Brezinski opined that plaintiff's heart attack was caused by her employment, the Full Commission gives his opinion less weight because he was not aware of her pre-existing medical condition and her prior treatment for coronary artery disease and because he did not explain that the attack resulted from circumstances which qualify as an untoward event, or an accident. The greater weight of the medical evidence is that plaintiff had pre-existing arteriosclerosis, high blood pressure, and high cholesterol and these conditions predisposed her to the heart attack that occurred in May 1999.
 ***********
The foregoing stipulations and findings of fact engender the following additional:
 CONCLUSIONS OF LAW
1. The claimant bears the burden to prove the elements of her claim, including that the injury is the result of an accident. Pitillo v. N.C.Department of Health Natural Resources, ___ N.C. App. ___,566 S.E.2d 807 (2002); Smith v. Pinkerton's Sec. Invest.,146 N.C. App. 278, 552 S.E.2d 682 (2001). When an employee is performing their work in the usual way and suffers a heart attack the injury does not arise by accident and is not compensable. Smith, supra; seeDillingham v. Yeargin Construction Co., 320 N.C. 499, 358 S.E.2d 380
(1987). Plaintiff's frustration with her job does not constitute an accidental event. Cody v. Snider Lumber Co., 328 N.C. 27, 399 S.E.2d 104
(1991). Plaintiff has failed to establish that she sustained a heart attack by accident. G.S. § 97-2(6).
 ***********
The foregoing stipulations, findings of fact and conclusions of law engender the following:
 AWARD
Plaintiff's claim for compensation is DENIED.
The parties shall each pay their respective costs.
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER