An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-139

Filed 18 February 2026

Johnston County, Nos. 22CR052665-500, 23CR002897-500, 22CR000789-500

STATE OF NORTH CAROLINA

v.

DANNY RAY HODGE

Appeal by Defendant from Judgment entered 29 January 2024 by Judge Paul A. Holcombe, III, in Johnston County Superior Court. Heard in the Court of Appeals 29 October 2025.

> *Attorney General Jeff Jackson, by Senior Deputy Attorney General J. Joy Strickland, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Nicholas C. Woomer-Deters, for Defendant-Appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Danny Ray Hodge (Defendant) appeals from a Judgment entered pursuant to jury verdicts finding him guilty of three counts of Failing to Disclose a New or Changed Online Identifier and his guilty plea to Habitual Felon status. The Record

before us, including evidence presented at trial, tends to reflect the following:

On 9 September 2003, Defendant was convicted of Second-Degree Sexual Offense and Second-Degree Rape. Pursuant to N.C. Gen. Stat. § 14-208.7, Defendant was required to register as a sex offender upon his release from incarceration in 2011.

As part of sex offender registration, Defendant was, among other things, required to provide all "online identifiers" he used or intended to use to the Johnston County Sheriff's Office. On 24 November 2020, Defendant met with Lieutenant Brian Murphy and filled out a form titled "Sex Offender Online Identifier Information." Defendant provided one online identifier on this form: "Emanem." About one month later, Defendant completed an updated Online Identifier Information form and gave the identifiers "Danny Hodge Ray," "Emanem," and an email address. Finally, on 15 March 2021, Defendant provided the identifiers "Danny Ray Hodge" and "Emanem."

On 9 June 2022, Lieutenant Murphy was informed about a Facebook account which was suspected of belonging to Defendant. The account, which used Defendant's photo, was registered on 12 April 2022 under the identifier "Danny Hodge." Lieutenant Murphy reviewed Defendant's file and concluded Defendant had not disclosed "that specific Facebook name" to the Sheriff's Office.

Lieutenant Murphy then obtained and served a search warrant on Meta Platforms, Inc.,[1] to access additional records associated with the "Danny Hodge"

---

[1] Facebook's parent company.

- 2 -

Facebook account. The records revealed the account holder was "Danny Hodge" and was associated with two email addresses: dannyrayhodge100@gmail.com and hodgedanny104@gmail.com; Lieutenant Murphy determined neither of these emails had been disclosed by Defendant to the Sheriff's Office. The account also listed Defendant's birthday, and a series of messages sent via the account repeatedly mentioned "Emanem"—one of the identifiers Defendant had provided to the Sheriff's Office.

Defendant was indicted on three counts of Failing to Disclose a New or Changed Online Identifier—one pertaining to the Facebook account and the other two for the two allegedly undisclosed email addresses. Additionally, Defendant was indicted for attaining the status of Habitual Felon.

At the close of the State's evidence, Defendant moved to dismiss the charges for insufficient evidence, because there was a variance in the indictment, and because N.C. Gen. Stat. § 14-208.11(a)(10) violated his right to free speech as applied to him under the First Amendment. The trial court deferred ruling on the First Amendment issue and denied the Motion on its alternate grounds. Defendant then testified on his own behalf. Defendant admitted Lieutenant Murphy went over the disclosure form with him, but testified he was not always clear on what an online identifier was and what was required of him.

On cross-examination, the State introduced the paperwork in which Defendant first registered as a sex offender and had acknowledged the online identifier

disclosure requirement. The forms were signed with Defendant's initials. Defendant admitted he signed "at least three forms" stating he had acknowledged that failing to provide his online identifiers was a class F felony. Defendant further admitted he never informed the Sheriff's Office he had a Facebook account nor disclosed "Danny Hodge" or the two emails associated with the Facebook account as online identifiers.

At the close of all evidence, Defendant renewed his Motion to Dismiss. The trial court determined Section 14-208.11(a)(10) did not violate the First Amendment as applied to Defendant and denied the Motion on all grounds.

The jury returned verdicts finding Defendant guilty on all counts. At sentencing, Defendant pleaded guilty to attaining Habitual Felon status. The trial court consolidated the convictions into one Judgment.[2] Defendant timely provided Notice of Appeal in open court.

## Issues

The issues on appeal are whether: (I) N.C. Gen. Stat. § 14-208.11(a)(10) is unconstitutional as applied to Defendant under the First Amendment to the United States Constitution; and (II) the trial court erred in denying Defendant's Motions to Dismiss for insufficient evidence.

## Analysis

I.    First Amendment

---

[2] On 31 January 2024, the trial court entered an Amended Judgment adding the conviction for Habitual Felon, which had been omitted from the original Judgment.

Defendant argues N.C. Gen. Stat. § 14-208.11(a)(10) is unconstitutional as applied to him because it violates his right to free speech under the First Amendment.[3] We review alleged violations of constitutional rights de novo. *State v. Quick*, 274 N.C. App. 94, 96, 851 S.E.2d 385, 387 (2020) (citation omitted).

"An as-applied challenge requires a defendant to show the statute at issue is unconstitutional as applied to the facts of his specific case." *State v. Nanes*, 297 N.C. App. 863, 870, 912 S.E.2d 202, 209 (2025) (citing *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211 (4th Cir. 2024)); *see also Town of Beech Mountain v. Genesis Wildlife Sanctuary, Inc.*, 247 N.C. App. 444, 460, 786 S.E.2d 335, 347 (2016) ("[A]n as-applied challenge represents a plaintiff's protest against how a statute was applied in the particular context in which plaintiff acted or proposed to act[.]" (quotation marks and citation omitted)), *aff'd per curiam*, 369 N.C. 722, 799 S.E.2d 611 (2017) (Mem.). "Whereas a facial challenge alleges that a statute can never be applied constitutionally, an as-applied challenge makes a significantly more modest claim. It merely asserts that a statute cannot be constitutionally applied to the party disputing its validity, even if the statute is otherwise generally enforceable." *N.C. Dep't of*

---

[3] We note that the label the parties give to their argument is not dispositive and this Court should treat an as-applied challenge as a facial challenge depending on the relief sought. *Singleton v. N.C. Dep't of Health and Human Servs.*, 386 N.C. 597, 599, 906 S.E.2d 806, 807-08 (2024) (citing *Doe v. Reed*, 561 U.S. 186, 194, 130 S. Ct. 2811, 2817, 177 L. Ed. 2d 493 (2010)). "[T]he distinction between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331, 130 S. Ct. 876, 893, 175 L. Ed. 2d 753 (2010). Here, Defendant has expressly made an as-applied challenge to the statute, and he requests narrow relief; thus, we conclude Defendant truly presents an as-applied challenge to the statute and treat it accordingly.

*Revenue v. Philip Morris USA, Inc.*, 388 N.C. 181, 189, 919 S.E.2d 175, 181 (2025) (quotation marks and citations omitted).

Moreover, "when considering the constitutionality of a statute or act there is a presumption in favor of constitutionality, and all doubts must be resolved in favor of the act." *Row v. Row*, 185 N.C. App. 450, 454-55, 650 S.E.2d 1, 4 (2007) (citation, quotation marks, and ellipses omitted), *disc. review denied*, 362 N.C. 238, 659 S.E.2d 741 (2008), *cert. denied*, 555 U.S. 824, 129 S. Ct. 144, 172 L. Ed. 2d 39; *see also Town of Spruce Pine v. Avery Cnty.*, 346 N.C. 787, 792, 488 S.E.2d 144, 147 (1997) ("[T]here is a strong presumption that enactments of the General Assembly are constitutional." (citing *Wayne Cnty. Citizens Ass'n for Better Tax Control v. Wayne Cnty. Bd. of Comm'rs*, 328 N.C. 24, 399 S.E.2d 311 (1991))).

The first step in our analysis is to determine whether the statute restricts protected speech and therefore triggers First Amendment scrutiny. *See State v. Bishop*, 368 N.C. 869, 872, 787 S.E.2d 814, 817 (2016). Defendant, citing *Watchtower Bible and Tract Society of New York v. Village of Stratton*, argues the statute burdens his ability and willingness to speak on the Internet. *See* 536 U.S. 150, 122 S. Ct. 2080, 153 L. Ed. 2d 205 (2002). In *Watchtower Bible*, a village in Ohio had enacted an ordinance requiring all door-to-door solicitors to register with the mayor's office and acquire a free permit prior to soliciting within the village. *Id.* at 154-55, 122 S. Ct. at 2083-84. In concluding the ordinance was unconstitutional, the Supreme Court of the United States observed "[i]t is offensive—not only to the values protected by

the First Amendment, but to the very notion of a free society—that in the context of everyday public discourse a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so." *Id.* at 165-66, 122 S. Ct. at 2089.

The State argues the facts at bar are distinguishable because Section 14-208.11(a)(10), unlike the ordinance in *Watchtower Bible*, does not require registered offenders to "pay any fee, . . . prevent them from using the internet[,] and does not prohibit speech." However, as the Court in *Watchtower Bible* explained, even if the requirement to secure a permit—or in this case, report an online identifier—is "a ministerial task that is performed promptly and at no cost to the applicant," it may nonetheless at least fall under First Amendment scrutiny. *Id.* at 166, 122 S. Ct. at 2089.

We do note that under the statute at issue, a registered sex offender has ten days within which to report a new or changed online identifier; thus, unlike the facts of *Watchtower Bible*, he does not necessarily have to disclose *prior* to engaging in speech. *See* N.C. Gen. Stat. § 14-208.9(e) (2023). Nonetheless, the statute burdens speech in *some* capacity—an offender must consider whether engaging in speech and expression online is worth the burden of disclosing his online identifier in doing so. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 568, 131 S. Ct. 2653, 2665, 180 L. Ed. 2d 544 (2011) ("An individual's right to speak is implicated when information he or she possesses is subjected to restraints on the way in which the information might be

used or disseminated." (citations and quotation marks omitted)). Thus, we agree with Defendant that the statute burdens speech and triggers additional scrutiny.

Next, we must determine the requisite level of scrutiny. The trial court applied intermediate scrutiny based on a determination that the statute is content-neutral. Neither party contests this application. Indeed, the statute requires an offender to disclose all online identifiers "without consideration of the content." *Durham Cnty. Dep't of Soc. Servs. v. Wallace*, 295 N.C. App. 440, 454, 907 S.E.2d 1, 11 (2024) (citing *Bishop*, 368 N.C. at 875, 787 S.E.2d at 819). Accordingly, we will proceed on the presumption that intermediate scrutiny is the appropriate standard.

" 'Articulations of intermediate scrutiny vary depending on context, but tend to require an important or substantial government interest, a direct relationship between the regulation and the interest, and regulation no more restrictive than necessary to achieve that interest.' " *State v. Packingham*, 368 N.C. 380, 387, 777 S.E.2d 738, 745 (2015) (quoting *Hest Techs., Inc. v. State ex rel. Perdue*, 366 N.C. 289, 298, 749 S.E.2d 429, 436 (2012)), *rev'd on other grounds*, 582 U.S. 98, 137 S. Ct. 1730, 198 L. Ed. 2d 273 (2017). However, a content-neutral regulation, "unlike a content-based restriction of speech, 'need not be the least restrictive or least intrusive means of' serving the government's interests." *McCullen v. Coakley*, 573 U.S. 464, 486, 134 S. Ct. 2518, 2535, 189 L. Ed. 2d 502 (2014) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799, 109 S. Ct. at 2746, 2757-58, 105 L. Ed. 2d 661 (1989)).

We agree with the State that "protecting the public" from recidivist sex

offenders and "assisting law enforcement with access to information for investigative purposes" are legitimate government interests. Indeed, in creating the sex offender registry, the General Assembly acknowledged "sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and that protection of the public from sex offenders is of paramount governmental interest[,]" and "the exchange of relevant information about those offenders among law enforcement agencies" would "assist law enforcement agencies' efforts to protect communities[.]" N.C. Gen. Stat. § 14-208.5 (2023).

Further, the statute is narrowly tailored because "its restrictions promote this significant government interest and would be achieved less effectively absent the restrictions." *Wallace*, 295 N.C. App. at 454, 907 S.E.2d at 12 (citing *Ward*, 491 U.S. at 796-99, 109 S. Ct. at 2758) (other citation omitted). The statute does not prohibit Defendant from accessing the Internet nor does it require him to disclose with whom he interacts on the Internet. Additionally, although he may do so, Defendant is not required to disclose a new or changed identifier prior to using it; rather, he has ten days to report the identifier to the Sheriff's Office. *See* N.C. Gen. Stat. § 14-208.9(e) (2023). Accordingly, on the facts of this case, the statute at least satisfies intermediate scrutiny as applied to Defendant and does not violate his free speech

rights under the First Amendment.[4]

II.     Motions to Dismiss

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon [a] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citation omitted). "If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion [to dismiss] should be allowed." *Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455 (citation omitted).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State,

---

[4] We again emphasize that our analysis of Defendant's as-applied constitutional challenge is limited to the facts of Defendant's case. *See Nanes*, 297 N.C. App. at 870, 912 S.E.2d at 209 (citation omitted). Our conclusion that the statute passes intermediate scrutiny is constrained to the "particular context in which [Defendant] acted[.]" *Town of Beech Mountain*, 247 N.C. App. at 460, 786 S.E.2d at 347 (citation omitted). We express no opinion on Section 14-208.11(a)(10)'s facial constitutionality.

giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted). However, "[w]hether the State has offered such substantial evidence is a question of law for the trial court." *State v. McKinney*, 288 N.C. 113, 119, 215 S.E.2d 578, 583 (1975) (citations omitted).

Under N.C. Gen. Stat. § 14-208.11(a)(10), a registered sex offender commits Failure to Disclose if he "[f]ails to inform the registering sheriff of any new or changes to existing online identifiers that the person uses or intends to use." Defendant argues the identifier he used for his Facebook account was one of "the same names he reported on the most recent online identifier sheet he completed."[5] Those names were: "Danny Ray Hodge" and "Emanem."[6] However, Defendant's Facebook account used the identifier "Danny Hodge," and Defendant admitted at trial that he had never provided this name to the Sheriff's Office as an online identifier. Likewise, the Record shows none of the Online Identifier Information forms Defendant completed disclosed the identifier "Danny Hodge." Although the variation between the identifiers "Danny Ray Hodge" and "Danny Hodge," is slight, this is nonetheless sufficient evidence from which a jury could find Defendant had failed to report a new or changed online identifier to the Sheriff's Office.

---

[5] Defendant challenges the denial of his Motions to Dismiss for insufficient evidence solely with respect to the online identifier used for his Facebook account ("Danny Hodge"). He has not contested his convictions for Failing to Disclose the two email addresses on this ground.

[6] The Record shows Defendant also previously provided the identifier: "Danny Hodge Ray."

Defendant further argues his failure to report "Danny Hodge" as an identifier was not willful. "The word 'willful,' when used in a criminal statute, means something more than an intention to do a thing. Willfulness requires doing an act purposely and deliberately in violation of law." *State v. Lamp*, 383 N.C. 562, 570-71, 884 S.E.2d 623, 629 (2022) (quotation marks and citations omitted).

At trial, the State presented evidence Defendant had been informed as to what the requirements of his sex offender registration were—including disclosing his online identifiers to the Sheriff's Office—and had signed documentation acknowledging he had received such information. Lieutenant Murphy had met with Defendant on multiple occasions, where Defendant completed or updated an Online Identifier Information form on which he was instructed to provide his online identifiers. Defendant provided several identifiers, none of which included "Danny Hodge"—the identifier used for his Facebook account. To be sure, Defendant testified at trial that he had been instructed to report his online identifiers to the Sheriff's Office, had used the identifier "Danny Hodge" for his Facebook account, and had failed to provide the identifier to the Sheriff's Office.

Thus, viewed in the light most favorable to the State, the evidence is sufficient to demonstrate Defendant knew he was required to disclose all new or changed online identifiers. Therefore, there is substantial evidence Defendant willfully failed to inform the Sheriff's Office he had begun using "Danny Hodge" as an online identifier. Consequently, the trial court did not err in denying Defendant's Motions to Dismiss

for insufficient evidence.

## **Conclusion**

Accordingly, for the foregoing reasons, we conclude there was no error at trial and affirm the Judgment.

NO ERROR.

Chief Judge DILLON and Judge STADING concur.

Report per Rule 30(e).