IN THE SUPREME COURT OF NORTH CAROLINA

No. 333PA17

Filed 8 June 2018

NORTH CAROLINA STATE BOARD OF EDUCATION

v.

THE STATE OF NORTH CAROLINA and MARK JOHNSON, in his official capacity

On discretionary review pursuant to N.C.G.S. § 7A-31, prior to a determination by the Court of Appeals, of an order granting summary judgment entered on 14 July 2017 by a three-judge panel of the Superior Court, Wake County, appointed by the Chief Justice pursuant to N.C.G.S. § 1-267.1. Heard in the Supreme Court on 7 February 2018.

> *Robert F. Orr, PLLC, by Robert F. Orr; and Poyner Spruill LLP, by Andrew H. Erteschik, Saad Gul, and John M. Durnovich, for plaintiff-appellant.*
>
> *Joshua H. Stein, Attorney General, by Olga Vysotskaya de Brito, Special Deputy Attorney General, and Amar Majmundar, Senior Deputy Attorney General, for defendant-appellee State of North Carolina.*
>
> *Blanchard, Miller, Lewis & Isley, P.A., by E. Hardy Lewis and Philip R. Isley, for defendant-appellee Mark Johnson.*

ERVIN, Justice.

This case requires us to determine whether legislation amending portions of Chapter 115C and other provisions of the North Carolina General Statutes violates Article IX, Section 5 of the Constitution of North Carolina. Plaintiff North Carolina State Board of Education is an entity established by the North Carolina Constitution

that consists of the Lieutenant Governor, State Treasurer, and eleven additional members, including one member from each of the State's eight educational districts, who are appointed by the Governor, subject to confirmation by the General Assembly, and serve eight-year overlapping terms. N.C. Const. art. IX, § 4. The Superintendent of Public Instruction is a popularly elected official who holds an office established by Article III, Section 7 of the North Carolina Constitution.

On 8 November 2016, defendant Mark Johnson was elected Superintendent of Public Instruction for a four-year term commencing on 1 January 2017. On 16 December 2016, the General Assembly enacted House Bill 17, which is captioned, in part, "An Act to Clarify the Superintendent of Public Instruction's Role as the Administrative Head of the Department of Public Instruction." Act of Dec. 19, 2016, ch. 126, 2017-1 N.C. Adv. Legis. Serv. 37 (LexisNexis) (Session Law 2016-126). House Bill 17, which amended numerous provisions of N.C.G.S. Chapter 115C, eliminated certain aspects of the Board's oversight of a number of the Superintendent's powers and duties, and assigned several powers and duties that had formerly belonged to the Board or the Governor to the Superintendent. Former Governor Patrick L. McCrory signed House Bill 17, which became Session Law 2016-126, into law on 19 December 2016.

On 29 December 2016, the Board filed a complaint in the Superior Court, Wake County, in which it sought a declaratory judgment to the effect that certain provisions of Session Law 2016-126 are unconstitutional and to have the challenged statutory

provisions temporarily restrained and preliminarily and permanently enjoined. According to the allegations set out in the Board's complaint, Session Law 2016-126 unconstitutionally transferred the authority conferred upon the Board in Article IX, Section 5 to "supervise . . . the free public school system," to "administer the free public school system," to "supervise . . . the educational funds provided for [the free public school system's] support," and to "administer . . . the educational funds provided for [the free public school system's] support" to the Superintendent. On the same date, Judge Donald W. Stephens entered a temporary restraining order in which he concluded, among other things, that, "when a constitution expressly confers certain powers and duties on an entity, those powers and duties cannot be transferred to someone else without a constitutional amendment" and that "the [challenged] provisions of [House Bill 17] . . . attempt to transfer these constitutional powers and duties . . . from the Board to the Superintendent of Public Instruction." As a result, Judge Stephens enjoined the State and its "officers, agents, servants, employees, and attorneys" from "taking any action to implement or enforce" Session Law 2016-126.

On 30 December 2016, Judge Stephens entered an order transferring this case to a three-judge panel of the Superior Court, Wake County, on the grounds that N.C.G.S. § 1-267.1 and N.C.G.S. § 1-1A, Rule 42(b)(4) require that facial challenges to the constitutionality of statutes, such as the one advanced by the Board in this case, be heard and determined by such an entity. On 6 January 2017, the three-judge panel entered a consent order extending Judge Stephens' temporary restraining

order "until a preliminary injunction hearing can be consolidated with the parties' dispositive motions." On 20 January 2017, the Superintendent indicated that he intended to intervene in this case. On 30 January 2017, the Board filed a summary judgment motion. On 1 March 2017, the three-judge panel entered an order that, among other things, recognized the Superintendent's intervention. On 12 April 2017, the Superintendent filed a summary judgment motion and the State filed a motion seeking to have the Board's complaint dismissed on subject matter and personal jurisdiction grounds and for failure to state a claim for which relief could be granted.

On 14 July 2017, the three-judge panel entered an order converting the State's dismissal motion into a summary judgment motion and granting summary judgment in favor of the State and the Superintendent. On the same day, the three-judge panel filed a memorandum of opinion explaining its decision to grant summary judgment in favor of the State and the Superintendent in which it concluded, in pertinent part, that:

> [M]any of the provisions of [Session Law 2016-126], particularly those which were not specifically addressed by the [p]laintiffs in their briefs and oral arguments, simply shift the details of day-to-day operations, such as hiring authority, from the State Board to the Superintendent. This court further concludes that those aspects of the legislation appear to fall well within the constitutional authority of the General Assembly to define specifics of the relationship between the State Board of Education and the Superintendent of Public Instruction.
>
> North Carolina's Constitution establishes two entities responsible for the governance of the public school

system: the State Board and the Superintendent. The allocation of powers and duties between these two constitutional entities has changed over time such that there has been an ebb and flow of the powers of each entity over the years, depending on various acts of legislation. Nevertheless, it appears to be the clear intent of the Constitution that the State Board shall have the primary authority to supervise and administer the free public school system and the educational funds provided for the support thereof, and that the State Board is empowered to make all needed rules and regulations related to each of those functions, subject to laws passed by the General Assembly. It also appears clear that as secretary to the State Board and chief administrative officer of the State Board, the Superintendent is primarily responsible for overseeing the day-to-day management and operations of the state's free public school system.

While the parties disagree as to what, if any, limits are placed on the power of the General Assembly to shift responsibilities back and forth between the State Board and Superintendent, this Court does not consider it necessary to articulate a precise definition on that boundary. Suffice it to say, it is at least abundantly clear to this Court that this action by the General Assembly in enacting [Session Law 2016-126] is not such a pervasive transfer of powers and authorities so as to transfer the inherent powers of the State Board to supervise and administer the public schools, nor does it render the State Board an "empty shell," nor does this action, which [p]laintiffs contend to be an infringement upon the constitutional powers and duties of the State Board of Education, operate to "unnecessarily restrict[ ] [the State Board of Education's] engaging in constitutional duties."

*N.C. State Bd. of Educ. v. State*, No. 16 CVS 15607 (N.C. Super. Ct. Wake County July 14, 2017), at 4-5 (unpublished) [hereinafter *Memorandum*] (last alteration in original) (quoting *State v. Camacho*, 329 N.C. 589, 596, 406 S.E.2d 868, 872 (1991)).

The three-judge panel paid particular attention to a provision of the newly enacted legislation providing that the Superintendent will "have under his or her direction and control, all matters relating to the direct supervision and administration of the public school system," ch. 126, sec. 4, 2017-1, N.C. Adv. Legis. Serv. at 39 (amending N.C.G.S. § 115C-21(a)(5)), and concluded that, rather than transferring authority from the Board to the Superintendent, the provision in question gives the Superintendent the ability "to manage the day-to-day operations of the school system, subject to general oversight by the State Board," and noted that other provisions of Session Law 2016-126, including those providing that the Board "shall establish all needed rules and regulations for the system of free public schools," *id.*, sec. 2, at 38 (amending N.C.G.S. § 115C-12), and that the Superintendent "shall administer all needed rules and regulations adopted by the [Board,]" *id.*, serve to "place[ ] a limit on the Superintendent's power, leaving the ultimate authority to supervise and administer the public school system with the State Board." *Memorandum* at 6. Similarly, the three-judge panel concluded that the provision of Session Law 2016-126 authorizing the Superintendent to "administer funds appropriated for the operations of the State Board of Education and for aid to local school administrative units," *id.*, sec. 4, at 40 (enacting N.C.G.S. § 115C-21(b)(1b)), is subject to "a limiting principle" given that Section 5 of Session Law 2016-126 requires the Superintendent to "administer any available educational funds through the Department of Public Instruction in accordance with all needed rules and regulations adopted by the State

Board of Education," "thereby leaving the ultimate authority to supervise and administer the school system's funds with the State Board." *Memorandum* at 6. Finally, the three-judge panel concluded that replacement of the word "policy" with the phrase "all needed rules and regulations" in N.C.G.S. § 115C-12 "does not change the constitutional role of the State Board of Education" or "conflict with the roles of the parties as defined by the state constitution" given the Board's constitutional authority to establish rules and regulations for the purpose of supervising and administering the public school system. *Id.* at 6-7. As a result, given that Session Law 2016-126 allows the Board to continue to "supervise and administer the public schools and make all necessary rules and regulations" and subjects the Superintendent's duties to the "power of the State Board," the three-judge panel concluded that statutory changes worked by Session Law 2016-126 do not contravene the relevant provisions of the North Carolina Constitution. *Id.* at 7.

On 20 July 2017, the Board noted an appeal to the Court of Appeals from the three-judge panel's order. On 5 September 2017, the Board requested the three-judge panel to continue to stay its decision pending completion of all proceedings on appeal. On 11 September 2017, the three-judge panel entered an order allowing the existing stay to remain in effect until a hearing on the extension motion could be held. On 20 September 2017, the Board sought a temporary stay and a writ of supersedeas from the Court of Appeals, which, on 5 October 2017, granted the requested temporary relief "to the extent that the challenged provisions of [Session Law 2016-126]

empower the Superintendent of Public Instruction to enter into statewide contracts for the public school system which could not be terminated by the Board immediately upon any decision by our Court in this matter which determines that the Board has the authority under our State Constitution to enter into such contracts." On 5 October 2017, the Board sought a temporary stay and the issuance of a writ of supersedeas from this Court, which granted a temporary stay on 16 October 2017 and allowed the Board's supersedeas petition on 7 December 2017. On 15 November 2017, the Board filed a petition with this Court seeking discretionary review of the three-judge panel's order prior to determination by the Court of Appeals. We allowed the Board's discretionary review petition on 7 December 2017.

In seeking relief from the three-judge panel's decision from this Court, the Board argues that the panel erroneously concluded that Session Law 2016-126 did not impermissibly transfer authority from the Board to the Superintendent given the newly enacted statutory language providing that "[i]t shall be the duty of the Superintendent" to "have under his or her direction and control, all matters relating to the direct supervision and administration of the public school system" and to "administer funds appropriated for the operations of the State Board of Education and for aid to local school administrative units." Ch. 126, sec. 4, 2017-1 N.C. Adv. Legis. Serv. at 38-40 (amending N.C.G.S. § 115C-21(a)(5) and enacting N.C.G.S. § 115C-21(b)(1b)). According to the Board, these provisions clearly "attempt[ ] to transfer to the [Superintendent] the same powers that the people of North Carolina

in their Constitution vested in the Board." In the Board's view, Session Law 2016-126's "attempt[ ] to statutorily reassign the Board's constitutional powers to the" Superintendent runs afoul of the Board's "constitutional power to supervise and administer the public school system and its funds" on the grounds that, "when a constitution expressly commits certain powers and duties to an entity, those powers and duties cannot be reassigned to a different entity without a constitutional amendment," citing *Camacho*, 329 N.C. at 594, 406 S.E.2d at 871; *Mial v. Ellington*, 134 N.C. 131, 162, 46 S.E. 961, 971 (1903); *Wilmington, Columbia & Augusta Railroad Co. v. Board of Commissioners of Brunswick County*, 72 N.C. 10, 13 (1875); and *King v. Hunter*, 65 N.C. 603, 612 (1871).

The Board contends that a decision to transfer its constitutional authority to the Superintendent "defies the intent of the framers" of the North Carolina Constitution, who included the Board and its powers in the constitution in order to effectuate Article I, Section 15 of the same document, which provides that "[t]he people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right." Although the constitutional provisions establishing the Board and defining its authority have been amended on a number of occasions, the authority granted to the Board by the 1868 constitution, which provided that "[t]he Board of Education . . . shall have full power to legislate and make all needful rules and regulations in relation to Free Public Schools," and that "all acts, rules and regulations of said Board may be altered, amended or repealed by the General

Assembly, and when so altered, amended or repealed, . . . shall not be re-enacted by the Board," N.C. Const. of 1868 art. IX, § 9, have been carried forward in subsequent revisions to the educational provisions of the North Carolina Constitution. For example, the 1942 amendments to the relevant constitutional provisions state that the Board "shall succeed to all the powers . . . of the State Board of Education as heretofore constituted," while the drafters of the 1971 constitution indicated that the proposed revisions, among other things, "restate[ ], in much abbreviated form, the duties of the State Board of Education, but without any intention that its authority be reduced." *Report of the North Carolina State Constitution Study Commission* 34 (1968). In view of the fact that the framers of the North Carolina Constitution intended that "[t]he general supervision and administration of the free public school system, and of the educational funds provided for the support thereof . . . shall . . . be vested in the State Board of Education," N.C. Const. of 1868, art. IX, § 8 (1944), with the Superintendent to fill the narrow role of serving as a non-voting "secretary and chief administrative officer of the [Board]," *id.* art. IX, § 4(2), the attempt made in Session Law 2016-126 to transfer the Board's authority to the Superintendent so as to empower him or her to administer the public schools conflicts with the intent underlying the relevant constitutional provisions.

This Court should not, according to the Board, interpret the constitutional reference in Article IX, Section 5, subjecting the Board's authority "to laws enacted by the General Assembly," to allow the General Assembly to reassign the Board's

authority to the Superintendent. According to the Board, such an interpretation ignores the principle set out by this Court in *State v. Lewis*, 142 N.C. 626, 631, 55 S.E. 600, 602 (1906), to the effect that state constitutions must be construed "as limitations upon the power of the state Legislature" and fails to give effect to each and every word contained in the text of the constitutional provisions that delineate the Board's authority rather than "lean[ing] in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory," first citing *Town of Boone v. State*, 369 N.C. 126, 132, 794 S.E.2d 710, 715 (2016); then quoting *Board of Education of Macon County v. Board of Com'rs of Macon County*, 137 N.C. 310, 312, 49 S.E. 353, 354 (1904). Furthermore, the Board points out that such an interpretation has no limiting principle and would allow the General Assembly to "remove constitutional entities or officers, replace them with individuals who better suit its political agenda, and effectively remake state government in its image."

The Superintendent argues that the trial court correctly ruled that Session Law 2016-126, which was intended, in part, to "reinforce[ ] the State Board's traditional role as the chief policy-setting, general administrative body for the schools," did not violate the Constitution by "disenfranchising" the Board. According to the Superintendent, nearly every statutory provision reworked in Session Law 2016-126 contains language subjecting the Superintendent's actions to "rules and regulations adopted by the State Board of Education." In addition, the

Superintendent argues that the provision making the assignment of responsibilities contained in Article IX, Section 5 "subject to laws enacted by the General Assembly," makes both the Board and the Superintendent "wholly subservient and auxiliary to the General Assembly." The Superintendent claims that this interpretation has support in the constitutional text, which provided in 1868, and continues to provide today, that the Superintendent's duties "shall be prescribed by law" and which has consistently made the Board's authority subject to that of the General Assembly. In fact, the General Assembly's authority over the Board has increased over time, with the 1868 Constitution having limited the General Assembly to reacting to rules and regulations adopted by the Board while the 1942 amendments authorized the General Assembly to take "preemptive measures to exercise its control over the public schools" and made the Board's authority subject to "such laws as may be enacted from time to time by the General Assembly," quoting N.C. Const. of 1868, art. IX, § 9 (1942). The Superintendent further contends that this Court's opinions in *Guthrie v. Taylor*, 279 N.C. 703, 712, 185 S.E.2d 193, 200 (1971), *cert. denied*, 406 U.S. 920, 92 S. Ct. 1774, 32 L. Ed. 2d 119 (1972), and *State v. Whittle Communications*, 328 N.C. 456, 464, 402 S.E.2d 556, 561 (1991), establish that the General Assembly "has plenary power to limit and revise even the *express* authority conferred" upon the Board. As a result, the Superintendent asserts that Session Law 2016-126 is nothing more than "a legitimate exercise of the constitutionally-conferred plenary authority of the General Assembly."

The Superintendent further argues that the General Assembly has the authority to allocate education-related responsibilities to the Superintendent, who is an elective constitutional officer who "stands on an equal constitutional footing with the State Board" and whose power stems from Article IX, Section 4, and Article III, Section 7(2), which provide that the Superintendent's "duties shall be prescribed by law" and whose office has "inherent functions" relating to public education, just like the Board. Prior to 1995, the relevant provisions of the General Statutes indicated that the Superintendent was the "chief day-to-day, or *direct*, administrator of the State's public schools," with the Board serving as the "chief policy-setting, *general* administrative body for the schools," with this structure clearly recognizing that the Superintendent occupies a full-time position while the Board meets for a "a total of 18 days a year." According to the Superintendent, Session Law 2016-126 is nothing more than "the latest of a series of efforts by the General Assembly over at least the past 50 years to attain an optimal allocation of authority and duties among the entities charged with overseeing the State's public school system."

In the Superintendent's view, "the People of North Carolina have chosen what is essentially a bicameral approach to the operation of the State's public school system," having "provid[ed] for two entities to exercise powers and duties simultaneously within a single field of government activity." In light of the unique nature of this constitutional assignment of authority, it makes sense that each entity's authority would be "subject to laws enacted" by the General Assembly. In

the event that the Board's authority to "supervise and administer" was not "subject to laws enacted by the General Assembly," there would be no point in having an elective Superintendent. As a result, "[t]he citizens of North Carolina have decreed that a Superintendent and a State Board shall oversee the public school system, have granted the General Assembly the authority to allocate powers and duties among them, and have empowered the General Assembly to make changes to such allocations of powers and duties to meet the changing priorities of the People over time."

Similarly, the State argues that Session Law 2016-126 has not imposed an unconstitutional limitation upon the Board's authority over the public education system because it specifies that "[t]he general supervision and administration of the free public school system shall be vested in the State Board of Education," provides that the Board "shall establish all needed rules and regulations for the system of free public schools," and retains much of the Board's existing authority over public education, including, among other things, the Board's authority to make budgets, apportion funds, determine standard course of study and graduation requirements, adopt textbooks, and establish and regulate teacher salaries. Ch. 126, sec. 2, 2017-1 N.C. Adv. Legis. Serv. at 38 (amending N.C.G.S. § 115C-12). In addition, the State contends that Session Law 2016-126 preserves the Board's general fiscal powers by leaving those portions of N.C.G.S. § 115C-408(a) recognizing that "[t]he Board shall have general supervision and administration of the educational funds provided by

the State and federal governments" unchanged, by allowing the Board to adopt rules and regulations regarding "available educational funds," and by leaving certain of the specific financial powers granted the Board by the existing statutory provisions intact. In the State's view, "[t]he Board's general supervisory and administrative powers over the public school system" and the "Board's power to supervise educational funds provided for the system's support" have not been unconstitutionally impaired.

According to the State, most of the changes that Session Law 2016-126 makes to the existing educational laws constitute statutory changes that have no constitutional significance. The State asserts that the "Board does not contend that the General Assembly must be restrained in its allocation of statutory, rather than constitutional, duties," with "the General Assembly's allocation of the statutory duties to the Superintendent [being] within its legislative authority." The State argues that the General Assembly's authority over the public schools, which antedates that of both the Board or the Superintendent, represents the "sturdiest leg of the three-legged design created by the framers" to govern the operation of the public schools, with the General Assembly having the authority "to shape [the] particulars of [the] relationship" between the Board and the Superintendent and to "enact laws that may limit and define the extent of the Board's and the Superintendent's authority over public education." In addition, the State joins the Superintendent in asserting that the Superintendent has "inherent constitutional

authority" by virtue of his role as "chief administrative officer of the State Board of Education." In view of the fact that the Superintendent is required to "administer all needed rules and regulations adopted by the State Board of Education through the Department of Public Instruction," the General Assembly has appropriately limited the Superintendent's authority to that authorized by the relevant constitutional provisions, citing N.C.G.S. § 115C-12 (as amended by S.L. 2016-126).

"[A] statute enacted by the General Assembly is presumed to be constitutional," *Wayne Cty. Citizens Ass'n v. Wayne Cty. Bd. of Commr's*, 328 N.C. 24, 29, 399 S.E.2d 311, 314-15 (1991) (citation omitted), and "will not be declared unconstitutional unless this conclusion is so clear that no reasonable doubt can arise, or the statute cannot be upheld on any reasonable ground," *id.* at 29, 399 S.E.2d at 315 (citing, *inter alia, Poor Richard's, Inc. v. Stone*, 322 N.C. 61, 63, 366 S.E.2d 697, 698 (1988)). Put another way, since "[e]very presumption favors the validity of a statute," that statute "will not be declared invalid unless its unconstitutionality be determined beyond reasonable doubt." *Baker v. Martin*, 330 N.C. 331, 334, 410 S.E.2d 887, 889 (1991) (quoting *Gardner v. City of Reidsville*, 269 N.C. 581, 595, 153 S.E.2d 139, 150 (1967)). "[A] facial challenge to the constitutionality of an act . . . is the 'most difficult challenge to mount successfully,'" *Hart v. State*, 368 N.C. 122, 131, 774 S.E.2d 281, 288 (2015) (quoting *Beaufort Cty. Bd. of Educ. v. Beaufort Cty. Bd. of Comm'rs*, 363 N.C. 500, 502, 681 S.E.2d 278, 280 (2009)), with the challenger being required to show "that there are no circumstances under which the statute might be

constitutional," *Beaufort Cty. Bd. of Educ.*, 363 N.C. at 502, 681 S.E.2d at 280 (citations omitted). "Where a statute is susceptible of two interpretations, one of which is constitutional and the other not, the courts will adopt the former and reject the latter." *Wayne Cty. Citizens Ass'n*, 328 N.C. at 29, 399 S.E.2d at 315 (citing *Rhodes v. City of Asheville*, 230 N.C. 759, 53 S.E.2d 313 (1949)). Before noting that, "[i]n respect to legislative offices, it is entirely within the power of the Legislature to deal with them as public policy may suggest and public interest may demand," *Mial*, 134 N.C. at 162, 46 S.E. at 971, this Court stated that, "in respect to offices created and provided for by the Constitution, the people in convention assembled alone can alter, change their tenure, duties, or emoluments, or abolish them," *id.* at 162, 46 S.E. at 971.

The Board asserts that several provisions of Session Law 2016-126 contravene the provisions of Article IX, Section 5 of the North Carolina Constitution, which provides that the Board "shall supervise and administer the free public school system and the educational funds provided for its support," with the exception of certain funds enumerated in Article IX, Section 7, "and shall make all needed rules and regulations in relation thereto, subject to laws enacted by the General Assembly." In addition, however, Article IX, Section 4 provides that "[t]he Superintendent of Public Instruction shall be the secretary and chief administrative officer of the State Board of Education," while Article III, Sections 7 and 8 provide that the Superintendent is an "elective officer[ ]" and member of the Council of State whose "duties shall be

prescribed by law." As a reading of the plain language of the relevant constitutional provisions clearly suggests, the Board, the Superintendent, and the General Assembly all have constitutionally based roles in the governance and operation of the public school system in North Carolina. On the one hand, the Board has the authority to "supervise and administer the free public school system and the educational funds provided for its support" and to "make all needed rules and regulations in relation thereto, subject to laws enacted by the General Assembly." N.C. Const. art. IX, § 5. The Superintendent, on the other hand, serves as "the secretary and chief administrative officer of the State Board of Education," *id.* art. IX, § 4, and performs other "duties [as] shall be prescribed by law," *id.* art. III, § 7(2). A "plain meaning" construction of the relevant constitutional provisions seems to us to clearly provide that the Board has the constitutionally based responsibility for the general supervision and administration of the public school system; that the Superintendent has the constitutionally based responsibility for directly administering the operations of the public school system; and that the General Assembly has the authority to make ultimate educational policy determinations and to enact legislation providing for the management and operation of the public school system, so long as that legislation does not deprive the Board of responsibility for the general supervision and administration of the public school system or deprive the Superintendent of the responsibility for directly administering the operations of that system. As a result, in order to evaluate the validity of the Board's challenge to the relevant provisions of

Session Law 2016-126, we must determine whether the legislation in question does, in fact, interfere with the Board's constitutionally based authority to generally supervise and administer North Carolina's system of public education.

Session Law 2016-126 made several changes to the "administrative duties" of the Superintendent as enumerated in N.C.G.S. § 115C-21. Among other things, the General Assembly deleted language from N.C.G.S. § 115C-21(a) making performance of the Superintendent's duties "[s]ubject to the direction, control, and approval of the State Board of Education"; removed various references to direction, approval, or delegation by the Board from various specific provisions contained in N.C.G.S. § 115C-21(a); and modified the descriptions of the administrative duties that were assigned to the Superintendent set out in N.C.G.S. § 115C-21(a). Pursuant to the modifications to N.C.G.S. § 115C-21(a) worked by Session Law 2016-126, the Superintendent was authorized to:

- "organize and establish a Department of Public Instruction which shall include divisions and departments for supervision and administration of the public system"

- "administer the funds appropriated for the operation of the Department of Public Instruction, in accordance with all needed rules and regulations adopted by the State Board of Education"

- "enter into contracts for the operations of the Department of Public Instruction;"

- "control and manag[e]" "all appointments of administrative and supervisory personnel to the staff of the Department of Public Instruction and the State Board of

Education, except for certain personnel appointed by the State Board of Education," and to "terminate these appointments in conformity with . . . the North Carolina Human Resources Act"

• "have under his or her direction and control, all matters relating to the direct supervision and administration of the public school system"

• "[c]reate and administer special funds within the Department of Public Instruction to manage funds received as grants from nongovernmental sources in support of public education in accordance with G.S. 115C-410"

• "administer, through the Department of Public Instruction, all needed rules and regulations established by the State Board of Education"

• "have under his or her direction and control all matters relating to the provision of staff services, except certain personnel appointed by the State Board as provided in G.S. 115C-11(j)" and

• "have under his or her direction and control all matters relating to the . . . support of the State Board of Education, including implementation of federal programs on behalf of the State Board."

Ch. 126, sec. 4, 2017-1 N.C. Adv. Legis. Serv. at 38-39 (amending N.C.G.S. § 115C-21(a)(1), (5), (8), and (9)). Similarly, Session Law 2016-126 deleted the language "[s]ubject to the direction, control, and approval of the State Board of Education" from the statutory provision defining the Superintendent's duties "as Secretary to the Board of Education" contained in N.C.G.S. § 115C-21(b); deleted various references to the necessity for compliance with "the instructional policies and procedures of" and the assignment of duties and responsibilities by the Board specified in certain

subparagraphs contained in N.C.G.S. § 115C-21(b); and amended specific duties assigned to the Superintendent set out in N.C.G.S. § 115C-21(b) so as to provide that the Superintendent, while acting as Secretary to the Board, must:

- "communicate to the public school administrators all information and instructions regarding needed rules and regulations adopted by the Board," and

- "perform such other duties as may be necessary and appropriate for the Superintendent of Public Instruction in the role as secretary to the Board."

*Id.* at 39-40 (amending N.C.G.S. § 115C-21(b)(6), (9)).

Session Law 2016-126 modified the division of responsibility between the Board and the Superintendent in other ways as well. Aside from making the Superintendent the administrative head of the Department of Public Instruction, *id.*, secs. 9, 10, 11 at 44 (amending N.C.G.S. §§ 143-745(a)(1), 143A-44.1 and repealing N.C.G.S. § 143A-22 (conferring powers and duties upon the State Board of Education)), the General Assembly enacted N.C.G.S. § 115C-11(i), requiring the Superintendent to "provide technical . . . and administrative assistance, including all personnel . . . to the State Board of Education through the Department of Public Instruction," and amended N.C.G.S. § 115C-19, requiring him to

- "carry out the duties prescribed under G.S. 115C-21 as the administrative head of the Department of Public Instruction . . . . [and] administer all needed rules and regulations adopted by the State Board of Education through the Department of Public Instruction."

*Id.*, secs. 1, 3, at 38. In addition, the General Assembly amended N.C.G.S. § 126-5(d) to allow the Superintendent to designate the greater of seventy positions, or two percent of the total number of full-time positions in the Department of Public Instruction, as exempt policymaking positions, and the same number as exempt managerial positions; to request that additional positions be designated as exempt; to designate as exempt positions created or transferred to a different department or located in a department that has been reorganized; and to reverse the status of positions that had been previously designated as exempt. *Id.*, sec. 8, at 41-44 (amending N.C.G.S. § 126-5(d)(2), (2a), (4), (5), and (6)). The General Assembly further provided that the Superintendent would serve as the Board's Chief Administrative Officer; would administer, along with the Board, the Achievement School District; would appoint, establish the salary for, supervise, and determine the tenure of the Superintendent of the Achievement School District; and "be responsible for the administration, including appointment of staff," for the Governor Morehead School for the Blind, the Eastern North Carolina School for the Deaf, and the North Carolina School for the Deaf, having the authority to reduce the number of positions at those institutions, and at the North Carolina Center for Advancement of Teaching, for the purpose of implementing budget reductions established for the 2015-2017 fiscal biennium. *Id.*, secs. 15, 16, 28, at 44-45, 50 (amending N.C.G.S. §§ 115C-75.6, -150.11, and amending "Section 8.37 of S.L. 2015-241, as amended by Section 8.30 of S.L. 2016-94"). Similarly, Session Law 2016-126 authorized the Superintendent to

appoint, establish the salary for, and assign otherwise unenumerated duties to the Executive Director of the Office of Charter Schools, with that individual to serve at the Superintendent's pleasure. *Id.*, sec. 17, at 45-47 (amending N.C.G.S. § 115C-218). Finally, Session Law 2016-126 allows the Superintendent to "establish a division to manage and operate a system of insurance for public school property in accordance with all needed rules and regulations adopted by the State Board of Education," to employ staff "necessary to insure and protect effectively public school property," and to "fix their compensation consistent with the policies of the State Human Resources Commission." *Id.*, sec. 25, at 49 (amending N.C.G.S. § 115C-535).

The General Assembly's description of Session Law 2016-126 as "clarify[ing]" the Superintendent's "role as the administrative head of the Department of Public Instruction" reflects that body's expressly stated intent "to restore authority to the Superintendent of Public Instruction as the administrative head of the Department of Public Instruction and the Superintendent's role in the direct supervision of the public school system," *id.*, sec. 30, at 50, and to assign several duties to the Superintendent that he or she either did not have or carried out subject to the Board's "direction, control, and approval" under prior law. The resulting statutory changes, which make the Superintendent the chief administrative officer for the Department of Public Instruction, give the Superintendent the authority to hire and fire the Department's employees and a large majority of the Board's employees, and authorize the Superintendent to manage certain funds available for the support of the public

schools, also provide that the Superintendent's actions are subject to rules and regulations adopted by the Board. For that reason, these statutory changes do not strike us as inconsistent with the Superintendent's constitutional authority as the "secretary and chief administrative officer of the State Board of Education" and as an "elective officer [ ]" whose "duties shall be prescribed by law." N.C. Const. art. IX, § 4(2), *id.* art. III, § 7(1)(2).[1] The General Assembly's decision to assign additional responsibilities to the Superintendent does not interfere with the Board's constitutional authority to generally supervise and administer the public school system given that the current statutory provisions governing the provision of public education in North Carolina, by providing that "[t]he general supervision and administration of the free public school system shall be vested in the" Board, ch. 126, sec. 2, 2017-1 N.C. Adv. Legis. Serv. at 38, and that the Board "shall establish *all* needed rules and regulations for the system of free public schools," *id.*, subject the Superintendent's authority to directly supervise and administer the public schools to the Board's more general oversight and control. As a result, we conclude that the

---

[1] Our decision to this effect is consistent with the determination that former Judge Robert H. Hobgood made in an order invalidating legislation creating a chief executive officer position within the Department of Public Instruction, the occupant of which was solely responsible to the Board, to the effect that, while "the State Constitution does not prohibit the General Assembly from establishing a position that has the authority and power to administer the day to day operations of the Department of Public Instruction as designated by the State Board of Education," such legislation must provide that "such responsibilities be exercised through the Superintendent of Public Instruction or under her supervision," given the Superintendent's "inherent powers" as an elected officer and as the Board's chief administrative officer. *Atkinson v. State*, No. 09 CVS 006655, 2009 WL 8597173 (N.C. Super. Ct. Wake County July 17, 2009) (order).

General Assembly's decision to give greater administrative authority to the Superintendent in Session Law 2016-126 is not, at least on its face, violative of Article IX, Section 5 of the North Carolina Constitution.

The essence of the Board's challenge to the validity of the statutory changes worked by Session Law 2016-126 rests upon a legislative determination that the Superintendent should "have under his or her direction and control, all matters relating to the direct supervision and administration of the public school system." Ch. 126, sec. 4, 2017-1 N.C. Adv. Legis. Serv. at 39 (amending N.C.G.S. § 115C-21(a)(5)). However, as we have previously noted, the Board's argument fails to fully take into account the fact that the constitutional text authorizes the Board to "supervise and administer" the public school system, N.C. Const. art. IX, § 5, while the newly enacted statutory language provides that the Superintendent shall direct and control "all matters relating to the *direct* supervision and administration" of the public school system, ch. 126, sec. 4, 2017-1 N.C. Adv. Legis. Serv. at 39 (emphasis added). The General Assembly's reference to "direct supervision" suggests that the Superintendent has been assigned responsibility for managing and administering the day-to-day operations of the school system, subject to rules and regulations adopted by the Board, with this allocation of responsibility between the Superintendent and the Board appearing to us to avoid an invasion of the Board's constitutionally based authority to generally supervise and administer the public school system while admittedly giving the Superintendent great immediate administrative authority.

The Board directs a similar argument against the provisions of Session Law 2016-126 transferring the authority to administer the funds provided for the operation of the public school system to the Superintendent, subject to rules and regulations adopted by the Board. More specifically, the Board asserts that section 4 of Session Law 2016-126 (enacting N.C.G.S. § 115C-21(b)(1b)), which provides that the Superintendent shall "administer funds appropriated for the operations of the State Board of Education and for aid to local school administrative units," and sections 3 and 4 of Session Law 2016-126, (amending N.C.G.S. §§ 115C-19 and 115C-21(a)(1)), which provide that, as "administrative head of the Department of Public Instruction," the Superintendent shall "administer the funds appropriated for the operation of the Department of Public Instruction, in accordance with all needed rules and regulations adopted by the State Board of Education," unconstitutionally transfer the Board's constitutional authority to supervise and administer the funds provided for the support of the public schools to the Superintendent. However, given that the Superintendent's authority over the funds to be utilized for public educational purposes is subject to rules and regulations adopted by the Board and given that N.C.G.S. § 115C-408 provides that "[t]he Board shall have general supervision and administration of the educational funds provided by the State and federal governments," we are unable to say that the relevant provisions of Session Law 2016-126 unconstitutionally transfer the Board's constitutionally based authority over the State's educational funds to the Superintendent.

The same logic precludes us from accepting the Board's challenges to other transfers of fiscal authority worked by Session Law 2016-126. Although the Board argues that the newly enacted provisions requiring the Superintendent to "collect and organize information regarding the public schools, on the basis of which he or she shall furnish the Board such tabulations and reports as may be required by the Board," ch. 126, sec. 4, 2017-1 N.C. Adv. Legis. Serv. at 40 (amending N.C.G.S. § 115C-21(b)(5)), and to "accept, receive, use, or reallocate to local school administrative units any gifts, donations, grants, devises, or other forms of voluntary contributions," *id.*, sec. 6, at 40 (amending N.C.G.S. § 115C-410), each of these additional grants of authority is also limited by the Board's authority to adopt appropriate rules and regulations applicable to these situations. As a result, we hold that the Board's continued ability to exercise its constitutional authority to generally supervise and administer the public school system is preserved by both the explicit statutory language affording the Board continued responsibility for the supervision and administration of the public school system and the explicit ability to adopt appropriate rules and regulations governing the duties that have been assigned to the Superintendent.

Our decision that the statutory changes worked by Session Law 2016-126 do not, at least on their face, invade the Board's constitutional authority under Article IX, Section 5, rests, in considerable part, upon the existence of numerous statutory provisions subjecting the Superintendent's authority to appropriate rules and

regulations adopted by the Board. We do not, after carefully reviewing these provisions and considering their likely impact upon the constitutionality of the statutory changes worked by Session Law 2016-126, believe that these references to "rules and regulations" contemplate the exercise of the Board's general supervisory and administrative authority exclusively by means of rules adopted and reviewed in compliance with the formal rule making provisions of the Administrative Procedure Act.[2] We reach this conclusion for at least two different reasons. First, the General

---

[2] The "rules and regulations" repeatedly mentioned in Session Law 2016-126 are not, in our opinion, necessarily equivalent to the rules and regulations at issue in our contemporaneous decision in *N.C. State Bd. of Educ. v. State*, ___ N.C. ___, ___, ___ S.E.2d ___, ___ (June 8, 2018) (110PA16-2), which holds that rules and regulations adopted by the Board are not exempt from the statutory provisions governing the submission of proposed rules for consideration by the Rules Review Commission. The rules and regulations at issue in that case are, generally speaking, subject to the rulemaking procedures specified in Chapter 150B of the General Statutes because they affect and are directed toward third parties, rather than merely seeking to govern the mechanics of the relationship between the Board and the Superintendent, as well as how their respective departments will operate internally. In other words, the rules at issue in *N.C. State Board of Education v. State* are, necessarily, subject to the full panoply of rulemaking procedures, including review by the Rules Review Commission, set out in the Administrative Procedure Act. Otherwise, there would be no need for us to decide the constitutionality of subjecting the Board's proposed rules to review by the Rules Review Commission. The rules and regulations at issue in this case are, on the other hand, directed primarily toward the internal governance of the state-level entities responsible for the governance of the public education system rather than toward the activities of parties external to those entities. For the reasons set forth in the text, these rules and regulations are not, as a general proposition, subject to the rulemaking procedures set out in the Administrative Procedure Act. As a result, the rules and regulations at issue in the cases we decide today represent distinct categories of Board decisions and are not, generally speaking, both subject to the rulemaking procedures, including the review process conducted before the Rules Review Commission, specified in the Administrative Procedure Act. In the event that a rule adopted by the Commission is subject to the current version of the Administrative Procedure Act, however, it must be adopted and reviewed in accordance with the provisions of Chapter 150B of the General Statutes regardless of the statutory provision authorizing the Board's action.

Assembly's repeated use of the phrase "rules and regulations," rather than "rules," in each of the newly enacted provisions transferring authority from the Board to the Superintendent subject to "rules and regulations" adopted by the Board contained in Session Law 2016-126 suggests that the General Assembly did not contemplate that the exercise of the Board's general supervisory and administrative authority over the public education system would be exclusively effectuated through the use of the formal rulemaking process described in the Administrative Procedure Act, which applies to explicitly defined "rules" rather than to "rules and regulations." Secondly, we need not make our decision explicitly dependent upon this logic because, even if the General Assembly intended the repeated references to "rules and regulations" in Session Law 2016-126 to be equivalent to "rules" as defined in the Administrative Procedure Act, we do not believe that the formal rulemaking provisions of the Administrative Procedure Act apply to the "rules and regulations" referenced in Session Law 2016-126.

In reaching the second of these two conclusions, we note that the Administrative Procedure Act excludes a number of agency actions from the ambit of its rulemaking provisions. N.C.G.S. § 150B-2(8a) (2017); s*ee State ex rel. Comm'r of Ins. v. N.C. Rate Bureau*, 300 N.C. 381, 411, 269 S.E.2d 547, 567-68 (1980), *abrogated on other grounds by In re Redmond*, 369 N.C. 490, 496-97, 797 S.E.2d 275, 279-280 (2017) (distinguishing between procedural rules, legislative rules, and interpretative rules and noting that "interpretative rules and general policy statements of agencies

are excluded from the [Administrative Procedure Act's] rulemaking provisions"). More specifically, we note that, while N.C.G.S. § 115C-2 does provide that "[a]ll action of agencies taken pursuant to this Chapter, as agency is defined in G.S. 150B-2, is subject to the requirements of the Administrative Procedure Act, Chapter 150B of the General Statutes," the Administrative Procedure Act excludes from the statutory definition of "rule" "[s]tatements concerning only the internal management of an agency or group of agencies within the same principal office or department" to the extent that "the statement does not directly or substantially affect the procedural or substantive rights or duties of a person not employed by the agency or group of agencies," N.C.G.S. § 150B-2(8a)(a), "[s]tatements of agency policy made in the context of another proceeding," such as "[d]eclaratory rulings," *id.* § 150B-2(8a)(e), and "[s]tatements that set forth criteria or guidelines to be used by the staff of an agency in performing audits, investigations, or inspections; in settling financial disputes or negotiating financial arrangements; or in the defense, prosecution, or settlement of cases," *id.* § 150B-2(8a)(g). As a result of the fact that the "rules and regulations" repeatedly referenced in Session Law 2016-126 appear to us to apply primarily to internal management or general policy statements than to the sort of rules that are subject to the Administrative Procedure Act's rulemaking requirements and the fact that a decision to treat Board decisions adopted for the purpose of exercising its general supervisory or administrative authority over the public education system as equivalent to formal Administrative Procedure Act-

compliant rules could cast serious doubt upon the constitutionality of at least some of the statutory provisions enacted in Session Law 2016-126, we hold that the "needed rules and regulations" to which Session Law 2016-126 refers are not subject to the rulemaking requirements of the Administrative Procedure Act.

Our decision to interpret the relevant statutory language in this fashion is further bolstered by the fact that, in at least two instances, the General Assembly substituted the phrase "needed rules and regulations" for the word "policy." As the three-judge panel noted, this amendment tends to make the relevant statutory language consistent with the language in which Article IX, Section 5, is couched rather than to suggest the existence of a legislative intention to make a substantive change in law. *See* ch. 126, sec. 2, 2017-1 N.C. Adv. Legis. Serv. at 38 (providing that "[t]he State Board of Education shall establish all needed rules and regulations for the system of free public schools, subject to laws enacted by the General Assembly"); *id.*, sec. 4, at 39-40 (amending N.C.G.S. § 115C-21(b)(6) to provide that "it shall be the duty of the Superintendent of Public Instruction . . . to communicate to the public school administrators all information and instructions regarding needed rules and regulations adopted by the Board"). Although we need not delineate with precision each and every instance in which the Board's authority to adopt rules and regulations is and is not subject to the formal rulemaking requirements set out in the Administrative Procedure Act, we do wish to be clearly understood as holding that the Board is not required to exclusively exercise the general supervisory and

administrative authority over the Superintendent set out in Session Law 2016-126 through the promulgation of Administrative Procedure Act-compliant rules.[3]

Thus, for the reasons set forth in greater detail above, we hold that the enactment of Session Law 2016-126 does not, at least on its face, contravene Article IX, Section 5 of the Constitution of North Carolina. As a result, the three-judge panel's decision is affirmed.

AFFIRMED.

Chief Justice MARTIN did not participate in the consideration or decision of this case.

---

[3] The textual analysis assumes the continued applicability of the existing version of Chapter 150B of the General Statues and should not be understood to expand or contract the current coverage of the Administrative Procedure Act. We express no opinion concerning the impact of any future change that might be made to the Administrative Procedure Act upon the constitutionality of any of the statutory changes worked by Session Law 2016-126.

Justice HUDSON concurring in result.

I agree with the majority that the enactment of Session Law 2016-126 does not on its face contravene Article IX, Section 5, of the North Carolina Constitution because the Board's "constitutional authority to generally supervise and administer the public school system is preserved by both the explicit statutory language affording the Board continued responsibility for the supervision and administration of the public school system and the explicit ability to adopt appropriate rules and regulations governing the duties that have been assigned to the Superintendent." I express no opinion on—and view as unnecessary to the decision here—the majority's discussion of categories of rules that may or may not be subject to the general rulemaking provisions of the APA. Instead, I would conclude only that rules or regulations adopted by the Board, regardless of category, would not be subject to review and approval by the Rules Review Commission. *See N.C. State Bd. of Educ. v. State*, ___ N.C. ___, ___, ___ S.E.2d ___, ___ (2018) (110PA16-2) (Martin, C.J., dissenting). Therefore, I concur in the result.